[Sac. No. 163.   Department Two.—May 20, 1897.]

ELIZABETH ADAMS, RESPONDENT, v. N. M. WEAVER,
APPELLANT.   ELIZABETH ADAMS ET AL., RESPOND-
ENTS, v. N. M. WEAVER, APPELLANT.

SALES—PAROL TRANSFER BY LESSEE TO LESSOR—VERBAL SURRENDER OF
    LEASE—STATUTE OF FRAUDS—LEVY OF EXECUTION—REPLEVIN.—Under
    section 1973 of the Code of Civil Procedure, personal property may be
    sold by a verbal agreement at a price exceeding two hundred dollars,
    provided the purchase money, or some part thereof, is paid, or posses-
    sion of the property, or of some part thereof, is taken by the purchaser;
    and, although, under the statute of frauds, the surrender of the estate
    of a lessee can only be made by consent of the parties in writing, or by
    operation of law, yet where personal property held by a lessee is paid
    for by the lessor under a parol contract of purchase, and is taken pos-
    session of by the lessor, at the time of a verbal surrender of the lease,
    and is afterward levied upon as the property of the lessee, under an
    execution, and replevied from the sheriff by the lessor, the question of
    the validity of the surrender of the lease is not involved in the action
    of replevin, but the sole inquiry relates to the validity of the sale of the
    personal property.

ID.—SALE TO MORTGAGORS—PAYMENT OF DEBTS—CHANGE OF POSSESSION
—EMPLOYMENT OF VENDOR AS FOREMAN.—Where the lessee had given
chattel mortgages to the lessors for personal property purchased from
them, and, being unable to carry out the terms of the lease, verbally
surrendered the lease, and yielded possession of the land leased to the
lessors, and at the same time transferred the personal property to them,
at a valuation fixed fairly by appraisers, in order to pay and discharge
his indebtedness to them and to others of his creditors, of whom he
gave them what he claimed was a full list, and the court finds that all
of the creditors named in the list were paid in full, and that other cred-
itors not named therein were also paid by the vendees in an amount in
excess of the appraised valuation of the property sold, and further finds
that the purchase was open, notorious, and for a valuable consideration,
and was accompanied by an immediate delivery and continued change
of possession, the mere circumstance that after the sale and delivery of
the property the vendor was employed as a foreman on the ranch for
about ten days, does not *per se* vitiate the sale, or conclusively render
it fraudulent, or call for a reversal of the findings, where it appears that
his changed position, from that of an owner to that of a servant, was
open and notorious, both to the men on the ranch and to the neighbors.

ID.—DELIVERY OF HARVESTED CROP.—Where the wheat crop was mort-
gaged to the lessors, and the harvested crop was stored in a warehouse
in the names of the lessors as mortgagees, and the lessee and lessors
counted the sacks, estimated the weight, and fixed the value at market
rates, upon a sale thereof to the lessors, the delivery of the harvested
crop is sufficient.

ID.—EVIDENCE—DEPOSITION OF PLAINTIFF—EXAMINATION OF PLAINTIFF AT
TRIAL—CONSTRUCTION OF CODE.—Where the deposition of the plaintiff
is taken before the trial, under subdivision 1 of section 2021 of the Code
of Civil Procedure, it cannot be rightfully rejected as evidence for the
defendant, on the sole ground that the plaintiff was present in court
and examined as a witness, and cross-examined by the defendant at the
trial; and the provision to that effect, found in section 2032 of that code,
does not apply to subdivision 1 of section 2021.

ID.—EXCLUSION OF DEPOSITION—APPEAL—PRESUMPTION AGAINST ERROR.
Where the deposition of the plaintiff, when offered by the defendant,
was excluded by the court, and the deposition is not made part of the
record upon appeal, it must be presumed in favor of the action of the
court that the contents of the deposition were immaterial, or inadmissi-
ble, as evidence.

APPEALS from orders of the Superior Court of Yolo
County, denying a new trial, in each of two actions.
W. H. GRANT, Judge.

The facts are stated in the opinion of the court.

*Phillip S. Driver*, and *Albert M. Johnson*, for Appel-
lant.

*F. E. Baker*. and *R. L. Simpson*, for Respondents.

THE COURT.—These are two actions of replevin, brought by the respondents respectively, and, by stipulation of counsel, tried together.

The appeal is from an order in each case denying defendant's motion for a new trial, and the two cases come up on the same record.

The question involved in each case (aside from a proposition involving the exclusion of a deposition offered by defendant as testimony) relates to the validity of certain conveyances of the property in dispute made by one J. R. Williams to the plaintiffs in the actions.

The property transferred to plaintiff Elizabeth Adams is a combined steam harvester and engine, and that transferred to Elizabeth Adams and L. O. Stephens, executrix and executor of D. O. Adams, deceased, consists of horses, mules, sheep, farming implements, hay, grain, etc., all of which was situate on the D. O. Adams ranch in the county of Yolo.

The defendant, N. M. Weaver, is sheriff of the county of Yolo, and, as such, levied upon the property in dispute under an execution upon a judgment in favor of Stanton, Thompson & Co., and against J. R. Williams, for $2,375.78 and costs, entered October 4, 1892.

The execution was levied October 4, 1892, and defendant's claim is that the property at the date of the levy was the property of said J. R. Williams, the judgment debtor, and subject to the payment of his debts. The findings of the court were in favor of the plaintiffs in each case upon all the material issues.

The attack of defendant upon the transfers of the property by J. R. Williams to the plaintiffs, respectively, is predicated upon the theory that such transfers were void under the statute of frauds. There is really but little conflict in the evidence. It tended to show that about September 1, 1890, Elizabeth Adams and L. O. Stephens, as executrix and executor, etc., of D. O. Adams, deceased, executed to J. R. Williams a lease of the Adams ranch for a term of five years; the lessors to place a flock of sheep upon the ranch, and to receive in

lieu of rent one-third of the hay, grain, etc., produced thereon, and one-half of the product of the sheep.

At the same time Williams purchased from the executors of the estate a large amount of personal property, including therein most of the property involved in these actions.  Williams did not pay for the personal property so purchased, but gave his promissory notes therefor as follows:

One to Mrs. Adams for $7,111.11, and two notes to the estate, aggregating about $13,434.73.  These notes were secured by a mortgage on all of Williams' share of the crops raised.

At the date of the transactions of 1892, hereafter mentioned, a large portion of the wheat crop, subject to the lien of the crop mortgage, was stored in warehouses at Madison and Esparto in the name of the executors as by the mortgage provided.  A small portion was on the ranch piled in a barn.

In August, 1892, Williams found that he could not carry on the place under his lease and meet his ranch bills.  He proposed to surrender up the ranch and sell the personal property to the executors for the payment of his debts to them, and to work for the estate as foreman on the ranch.

On or about the 25th of August Mrs. Adams, her attorney, and Williams met and agreed upon a surrender of the ranch and purchase by the executors of all the personal property.  For the purpose of ascertaining the value of the property, except the grain, sheep, and a few other things having a well known market value, they each selected an appraiser, and they to select a third, and to abide by their valuation of the property.

The appraisers were selected, and on the twenty-ninth day of August valued 'the property, making duplicate lists thereof, which they turned over to Williams and the executors.  For a day or two thereafter the parties were engaged in fixing the value of the wheat and other property not submitted to the appraisers for valuation, and upon a final footing it was found the aggre-

gate value of the whole was $25,450.35, and the aggregate of indebtedness on the part of Williams to Mrs. Adams and the executors was $20,545.84, and the excess of the purchase price over the indebtedness was $4,904.51.

The combined harvester was valued at $5,000, and Mrs. Adams took it in payment of her note upon which that amount was due. A part of the same agreement was that Williams should furnish to the executors a list of his creditors and the amount due to them, which debts were to be paid out of the balance going to him after satisfying the demands of the executors and of Mrs. Adams.

This list was furnished, and Williams declared it was all he owed in the world. It turned out that his indebtedness to the ranch hands was in excess of his statement, but the executors paid them and the accounts of others presented by him, although the amount was in excess of the sum due on the sale.

On the first day of September, 1892, according to the testimony, the executors "took formal possession of everything. Mr. Williams surrendered the lease to us and delivered possession of the leased land. We called up the men and told them that Mr. Williams' possession of the ranch was terminated; that he surrendered the same to us, and that the men would thereafter remain in our employ, and that the estate would pay them for their services subsequent to the 1st of September."

The combined steam harvester had belonged to plaintiff Elizabeth Adams prior to September, 1890, was sold by her to Williams, and she held a chattel mortgage thereon to secure the purchase price, which was represented by her note against Williams. This mortgage was of record. The sale was conducted openly. Notice thereof was published in a newspaper during its progress, and creditors were notified to exhibit their accounts, and plaintiffs knew nothing of any debts owing by Williams except those settled. After turning over the property to the plaintiffs on the 1st of September

Williams returned to the ranch, and, under an agreement with Mrs. Adams, acted as foreman until the 12th of September, when he left, and, it is claimed, absconded, and, it would appear from the record, is in Mexico. There was no written bill of sale of the personal property and no written surrender of the leasehold estate. Defendant levied his execution on the property October 4, 1892.

The first point made by appellant for reversal is that the contract was invalid because not in writing.

The argument is based largely upon the fact that the transaction involved the surrender of the leasehold estate of Williams in the ranch, and compensation to him for plowing a portion of the land, etc.

Under our statute of frauds, the surrender of the estate of a lessee can only be by the consent of the parties in writing, or by operation of law. (*Welcome* v. *Hess*, 90 Cal. 507.)

Whether the acts of the parties in this case amounted to a surrender by operation of law need not concern us, as neither the land nor the leasehold interest of Williams therein are involved in the action. The question relates solely to the personal property seized by defendant under the execution. The leasehold interest of Williams in the ranch was not, so far as appears, levied upon, and, had it been, it would not be the subject of inquiry in this action, which is replevin.

The property involved in this action was subject to be sold by a verbal agreement, provided the purchase money, or some portion thereof, was paid or possession taken as provided by section 1973 of the Code of Civil Procedure.

We think the evidence shows that the entire purchase price was paid, and possession of the property taken under the sale.

It is next urged that the sale was void because not accompanied by an immediate delivery, etc., as required by section 3440 of the Civil Code. That section is, in part, as follows:

"Every transfer of personal property . . . . is conclusively presumed, if made by a person having at the time possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession." Appellant cites *Edwards* v. *Sonoma Valley Bank*, 59 Cal. 148, and *Watson* v. *Rodgers*, 53 Cal. 401. In each of those cases the trial court found that there was not an immediate delivery or continued change of possession, and thereupon the supreme court held the transfers void as against creditors of the vendor, who were such while he remained in possession. In these cases the finding is that the purchase was open, notorious, and for a valuable consideration, and was accompanied by immediate delivery and continued change of possession. We cannot say that these findings are not supported by the evidence.

The only thing militating against the conclusion reached by the court is the circumstance that, after the sale and delivery of the property, the vendor was employed as a foreman on the ranch, and filled that office for some ten days, more or less; but his changed position from that of an owner to a servant was open and notorious, not only to the men on the ranch, but to the neighbors; and, while his employment was some evidence of fraud, it was not conclusive. (*Godchaux* v. *Mulford*, 26 Cal. 316; *Etchepare* v. *Aguirre*, 91 Cal. 288, 295.)

We are not often called upon to investigate a case of alleged fraud, either actual or constructive, in which the evidence of upright conduct and fair dealing is more apparent than that of the vendees and plaintiffs in this action.

The contention of appellant that the wheat in the warehouse was never delivered is not sustained by the record. In the first place it was deposited or stored in the name of the executors as mortgagees. Again, Will-

iams and the agent of the executors counted the sacks, estimated the weights, and figured the value at market rates.

It is also urged that the court erred in excluding the deposition of the plaintiff Elizabeth Adams. This deposition had been taken on motion and on behalf of appellant. The said Elizabeth was present at the trial, was a witness on her own behalf, testified at length, was cross-examined by appellant's counsel, and was present when the deposition was offered. It was not offered for impeachment, and no foundation was laid for offering it for that purpose. All that appears is that defendant offered the deposition; that respondent objected to it as incompetent, and that it did not appear that the witness was absent; but it did appear that she was present in court and had fully testified and been cross-examined by appellant, and that " the court sustained the objection, and the defendants then and there duly excepted."

The witness was a party to the action, and her deposition was taken evidently under subdivision 1 of section 2021 of the Code of Civil Procedure, and, of course, her deposition could not have been rightfully rejected on the sole ground that she was present in court, for the provision to that effect to be found in section 2032 does not apply to subdivision 1 of said section 2021. (*Newell* v. *Desmond,* 74 Cal. 46; *Johnston* v. *McDuffee,* 83 Cal. 30.) But the deposition is not in the record, and there is nothing there which gives the slightest intimation of its contents—except only " that it was duly and legally taken." Therefore, it does not, of course, appear that appellant was prejudiced by the ruling; but if this be a case where the rule that injury is presumed from abstract error can be successfully invoked, still it does not appear that the exclusion of the deposition was error. The judgment of a trial court will not be reversed for the exclusion of evidence, unless it appears that there was no sufficient ground for such exclusion. But in the case at bar the contents of the deposition may have been utterly immaterial, or inadmissible as evidence;

and, therefore, the conclusion that the court erred in excluding the deposition does not follow from the mere fact of its exclusion—the deposition itself not being before us.

The orders appealed from are affirmed.