[S. F. No. 6273.   Department One.—March 9, 1914.]

W. P. HASSELL, Appellant, v. WILLIAM H. BUNGE, Defendant and Respondent; LUTELLUS SMITH et al., Defendants.

SALE—CHANGE OF POSSESSION—WHAT CONSTITUTES.—To constitute the delivery and change of possession required to constitute a valid sale of personal property under section 3440 of the Civil Code, there must be a visible and apparent change of the custody of the property such as to give evidence to the world of the claims of the new owner.

ID.—ACTUAL CHANGE OF POSSESSION — MARKS OF OWNERSHIP.—The change of possession must be actual, not merely constructive; it must be open and unequivocal, carrying with it the usual marks and indications of ownership.

ID.—QUESTION FOR TRIAL COURT OR JURY — REVIEW ON APPEAL.— Whether, under these tests, there has been a delivery and change of possession is a question of fact, to be determined by the trial court or jury upon a consideration of all of the evidence. The finding upon this, as upon other issues of fact, is conclusive on appeal, unless, reading the evidence in the light and with the inferences most favorable to the conclusion reached below, the appellate court can say that that conclusion is without substantial support in the record.

ID.—CONTINUED CUSTODY BY PERSON WHO, BEFORE SALE, WAS IN POSSESSION FOR SELLER.—It is not the rule that a continued custody by a person who, before the transfer, had been holding custody for the seller is, as a matter of law, necessarily inconsistent with the delivery and change of possession required by the Civil Code. It is a circumstance entitled to considerable weight, but its effect may be explained and overcome by the other facts appearing.

ID.—PERSONALTY CONNECTED WITH MINE—CHANGE OF POSSESSION.— In this action by a judgment creditor to set aside, on the ground of fraud, a sale of personal property consisting of mining and other machinery, some iron and steel, ten tons of concentrates, thirty tons of hay, eighty cords of wood, three horses, three sets of harness, and a wagon, belonging to a mining company and situated on certain mining claims, the evidence justifies the finding that the transfer was accompanied by the delivery and change of possession required by the statute.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. B. V. Sargent, Judge presiding.

The facts are stated in the opinion of the court.

J. S. Lamson, Leo D. Byrne, Byrne & Lamson, for Appellant.

W. D. Tillotson, and Hiram W. Johnson, Jr., for Respondent.

SLOSS, J.—The plaintiff, a judgment creditor of Black Tom Gold Mines Company, a corporation, brought this action to set aside a transfer of personal property made by said corporation to William H. Bunge. The complaint alleged that the transfer was made with the intent of hindering and defrauding the plaintiff and also attacked the transfer for want of the "immediate delivery, and actual and continued change of possession" required by section 3440 of the Civil Code. At the trial the plaintiff introduced no evidence to prove actual fraud, and he now relies solely upon the constructive fraud defined by the statute. The findings and judgment were in favor of the defendant Bunge, and the plaintiff appeals from the judgment and from an order denying his motion for a new trial.

The main point made is that the evidence is insufficient to sustain the finding that the transfer was accompanied by an immediate delivery and was followed by an actual and continued change of possession.

Section 3440 of the Civil Code, and the similar statute in force before the enactment of the codes, have been considered by this court in numerous cases. It is well settled that, in order to constitute the delivery and change of possession required, "there must be a visible and apparent change of the custody of the property such as to give evidence to the world of the claims of the new owner." (*McKee Stair Bldg. Co.* v. *Martin,* 126 Cal. 557, [58 Pac. 1044].) The change of possession must be "actual, not merely constructive" (*Sequeira* v. *Collins,* 153 Cal. 426, [95 Pac. 876]; *Bunting* v. *Saltz,* 84 Cal. 168, [24 Pac. 167]); it must be "open and unequivocal, carrying with it the usual marks and indications of ownership" (*Stevens* v. *Irwin,* 15 Cal. 503, [76 Am. Dec. 500]; *George* v. *Pierce,* 123 Cal. 172, [55 Pac. 775, 56 Pac. 53]). Whether, under these tests, there has been a delivery

and change of possession is a question of fact, to be determined by the trial court or jury upon a consideration of all of the evidence. The finding upon this, as upon other issues of fact, is conclusive on appeal, unless, reading the evidence in the light and with the inferences most favorable to the conclusion reached below, the appellate court can say that that conclusion is without substantial support in the record. "Every case of the kind here involved has its own peculiar features, and must be determined on the particular facts which surround the given transaction or transfer." (*Byrnes* v. *Moore*, 93 Cal. 392, [29 Pac. 70] ; *Feeley* v. *Boyd*, 143 Cal. 282, [65 L. R. A. 943, 76 Pac. 1029].)

The facts shown in the case at bar were such as, in our judgment, to justify the finding that the transfer to Bunge was accompanied by the delivery and change of possession required by the statute.

The personal property involved consisted of mining and other machinery, some iron and steel, ten tons of concentrates, thirty tons of hay, eighty cords of wood, three horses, three sets of harness, and a wagon. The property belonged to Black Tom Gold Mines Company, and was situated upon certain mining claims in Shasta County. These claims were owned by Niagara Summit Mining Company, and were in the possession of Black Tom Gold Mines Company, which was operating them under an option of purchase. Early in November, 1910, the Black Tom Company became financially embarrassed. It was then indebted in the sum of five thousand dollars or more to the men who had been employed by it in the working of the mines. The defendant Bunge was the president of the Niagara Summit Mining Company. Lutellus Smith was president of the Black Tom Company, and was acting as manager of the mines for said company. W. D. Tillotson, an attorney at law residing at Redding, Shasta County, about twenty-seven miles from the mines, was the attorney of the Niagara Summit Mining Company, and the attorney and agent of Bunge.

J. F. Jones had been engaged, for some time prior to the disputed transfer, in prospecting the claims under a contract with the Black Tom Company. On November 10 or 11, 1910, one Kruze, an engineer employed by Bunge, closed the mine down and put Jones in charge for Bunge. Jones was directed

to follow the instructions of Tillotson. At the same time Smith left the property, telling Jones that he (Smith) had nothing more to do with it. On the evening of the same day, Smith & Kruze visited Tillotson's office at Redding, and there, on the 10th or 11th of November, a bill of sale transferring the property to Bunge was executed and delivered. The consideration was Bunge's agreement to provide the money required to pay off the men who had been working on the mining ground.

The foregoing statement is compiled from declarations of various witnesses. There may be testimony tending to contradict it in some particulars, but the trial court must be deemed to have accepted the version most favorable to the prevailing party. On the facts thus outlined, it is clear that the finding that there had been an immediate delivery and an actual and continued change of possession is fully supported. Prior to the transfer, the mines had been in operation under the management of Smith, the president of the Black Tom Company. At or very near the time of the transfer, the mines were closed down, Smith, the president, left the ground, the property in question was delivered, so far as a delivery was possible, to Jones, as agent of the purchaser, and Jones, as such agent, thereafter remained in sole and unquestioned control. These circumstances certainly cannot be said to present a case of a merely colorable change of possession. The facts were such as to justify the trial court in concluding that the change of custody had been "visible and apparent," and of a character that would "give evidence to the world of the claims of the new owner." (See *McKee Stair Bldg. Co.* v. *Martin,* 126 Cal. 557, [58 Pac. 1044].)

The appellant relies upon testimony of Jones to the effect that for four or five days before the arrival of Kruze he was in custody of the property as keeper for the Black Tom Company. It is argued that a subsequent delivery to and possession by Jones did not make any change in the apparent custody. It is not the rule that a continued custody by a person who, before the transfer, had been holding custody for the seller is, as matter of law, necessarily inconsistent with the delivery and change of possession required by the Civil Code. It is, no doubt, a circumstance entitled to considerable weight, but its effect may be explained and overcome by the other

facts appearing. (See *Godchaux* v. *Mulford,* 26 Cal. 316, [85 Am. Dec. 178] ; *Adams* v. *Weaver,* 117 Cal. 42, [48 Pac. 972].) Here the evidence of Jones, read in its entirety, is consistent with the view that, while, for the four or five days before the transfer, he was looking after the personal property, he was acting under Smith, who, during this period, was in general charge of the mines and the property thereon. The real and the apparent possession were in Smith. When Smith, on the 10th or 11th of November, turned the property over, the position of Jones was changed from that of a mere employee acting as caretaker under the orders of a superior on the ground to that of one in sole personal possession and control. The change was one that may fairly be said to have been apparent to any one in a position to observe what had taken place. So, too, the fact that the Black Tom Company paid Jones up to the fifteenth day of November, is not enough to overcome the other facts upon which the court based its finding. There was ample testimony to the effect that notwithstanding this circumstance, Jones was in possession for Bunge from the tenth day of November.

In the reply brief the suggestion is made for the first time that the court erred in permitting a witness to testify that the transfer was made to Bunge in consideration of his advancing the money needed to pay off the men who had been working in the mine. The complaint alleged that the transfer was made without consideration and with the intent to defraud the plaintiff. The answer denied the allegation. The testimony was certainly relevant to the issue thus made. Its admissibility cannot be affected by the fact that on this appeal the plaintiff no longer claims that there was any actual fraud.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.