[S. F. No. 9777.   In Bank.—February 16, 1923.]

MAH SEE, etc., Respondent, v. NORTH AMERICAN AC-
   CIDENT INSURANCE COMPANY (a Corporation),
   Appellant.

[1] CONTRACTS—RULE OF INTERPRETATION.—The rule of interpretation is that the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.

[2] ACCIDENT INSURANCE—PROVISO—CONSTRUCTION.—In a proviso of an accident insurance policy providing that the policy is issued upon condition that the company assumes no liability thereunder should the accident, injury, disability, death, loss of limb or sight result wholly or in part, directly or indirectly, from injury intentionally inflicted on the insured by any person, the words "on the insured" cannot be deemed to have been inserted for the purpose of qualifying the verb "inflicted," but as qualifying the adverb "intentionally," and as defining the intention of the person inflicting the injury.

[3] ID.—WHEN PROVISO OPERATIVE.—The concurrence of three elements is requisite to render such proviso operative: (1) an inten-

tion to injure, (2) directed at the insured, and (3) the infliction of injury upon him.

[4] ID.—LIABILITY UNDER POLICY—INTENT TO INJURE ANOTHER.—The insurer is not exempt from liability under such a proviso if the person who shot the insured intended thereby to shoot some other person.

[5] ID.—EXCEPTIONS—LIMIT TO LIABILITY—CONSTRUCTION.—A proviso in an accident insurance policy which is uncertain or ambiguous, rendering it capable of either of two constructions, one holding the insurer liable and the other exempting it, must be construed liberally in favor of the insured and strictly as against the insurer, (1) because it is found in a policy of insurance, and (2) because it is found in an exception, attached to the policy, which purports to limit the risk assumed by the insurer in the general provisions thereof.

[6] ID.—CAUSE OF DEATH—EVIDENCE—BURDEN OF PROOF.—In an action upon an accident insurance policy for death caused by shooting, the burden is upon the plaintiff to prove by a preponderance of the evidence that the death resulted "through accidental means," as provided in the body of the policy, but that burden is fully met when it is shown, without contradiction, that the shooting did not follow as a natural or probable result from anything done by the insured; and on the issue raised by the claim of defendant that the insured died as a result of "injuries intentionally inflicted" on him, the burden of proof rests upon the defendant.

[7] APPEAL—FINDING—QUESTION OF FACT—INFERENCES.—Even though all the facts are admitted or uncontradicted, if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there still remains in the case a question of fact to be determined by the jury, or court if tried by the court, and the verdict of the jury or finding of the court thereon cannot be set aside on appeal on the ground that it is not sustained by the evidence; and the evidence must be regarded in the light most favorable to the support of the judgment.

[8] ACCIDENT INSURANCE—EVIDENCE—CERTIFICATE OF DEATH—WHEN INADMISSIBLE.—A certified copy of a certificate of death, which stated the cause of death of the insured as "homicide," was properly stricken from evidence after its admission in an action on an accident insurance policy, when it appeared that there was a physician in attendance at the death of the insured but that he did not sign the certificate.

[9] ID.—IMPROPER QUESTION.—In an action upon an accident insurance policy, objection was properly sustained to the question, "As a matter of fact do you know that Fong Wing [the insured], prior to his being injured or killed, had been threatened on the part of certain tong leaders in Chinatown?"

[10] Id.—Proper Sustaining of Objection.—In such a case, objection was properly sustained to the question, "Did you receive another anonymous letter on the day following the shooting of Fong Wing [the insured]?"

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

John Ralph Wilson, C. B. Morris and Fred L. Berry for Appellant.

Harding & Monroe and Robert H. Borland for Respondent.

MYERS, J.—The plaintiff, who was the wife of one Fong Wing, and the beneficiary named in an accident insurance policy issued to him by the defendants, sues herein to recover for his death by shooting.

This is a companion case to *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269], and the facts in the two cases are the same, except that the language of the proviso or exception attached to the policy and relied upon by the defendant herein is materially different. The policy herein contained the following proviso:

"This policy is issued upon condition that the company assumes no liability hereunder should the accident, injury, disability, death, loss of limb or sight, result wholly or in part directly, or indirectly, from injury *intentionally inflicted on the insured* by any person." (Italics ours.)

The principal contention of the defendant is that the evidence does not support the finding of the court that, "It is not true that the death of said Fong Wing was caused wholly or directly by personal injury intentionally inflicted upon him." It is apparent from the evidence that the person who did the shooting was at the time aiming at Fong Wing, and that the shots killed him. He was killed by someone who either intended to kill the said Fong Wing, or who intended to kill some other person and shot at Fong Wing, believing at the time that he was such other person. In the former event, the company clearly would not be

liable and its counsel contend that the same result would follow the latter event. They argue that the person killed was the one at whom the shots were aimed, and that when it transpires that he was in fact the insured, it follows that the injury was "intentionally inflicted on the insured." We cannot adopt this view. To do so is to strike out from the proviso the words "on the insured" and make it read so as to exempt the company from liability for "injury intentionally inflicted by any person." [1] But the rule of interpretation is that "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, sec. 1641.) [2] The words "on the insured" cannot be deemed to have been inserted in the proviso for the purpose of qualifying the verb "inflicted," because they are unnecessary for that purpose and, so regarded, they are wholly superfluous. The entire contract of insurance concerns itself only with injuries to the insured. Injuries to any other person would be wholly irrelevant thereto. If, then, we are to give any effect to those words, which we must do, "if reasonably practical," they must be regarded as qualifying the adverb "intentionally," and as defining the intention of the person inflicting the injury. [3] We conclude, therefore, that the concurrence of the three elements is requisite to render the proviso operative: (1) an intention to injure, (2) directed at the insured, Fong Wing, and (3) the infliction of injury upon him. [4] From this it follows that the company is not exempted from liability if the person who shot Fong Wing intended thereby to shoot some other person. This conclusion finds support in the cases of *Utter* v. *Travelers' Ins. Co.,* 65 Mich. 545 [8 Am. St. Rep. 913, 32 N. W. 812], and *Butero* v. *Travelers' Acc. Ins. Co.,* 96 Wis. 536 [65 Am. St. Rep. 61, 71 N. W. 811].

[5] But if it be conceded that the language of the proviso is susceptible to the construction contended for by the defendant, it must also be conceded that it is likewise susceptible to the construction here adopted, and we are thus confronted by an uncertainty or ambiguity, which it is our duty to construe liberally in favor of the insured and strictly as against the insurer. This for two reasons: (1) Because it is found in a policy of insurance (Civ. Code, sec. 1654; *Maryland Casualty*

*Co.* v. *Industrial Acc. Com.*, 178 Cal. 491, 494 [173 Pac. 993];
*Wells Fargo & Co.* v. *Pacific Ins. Co.*, 44 Cal. 397); and (2)
because the language in question is found in an exception,
attached to the policy, which purports to limit the risk as-
sumed by the insurer in the general provisions thereof.
(*Berliner* v. *Travelers' Ins. Co.*, 121·Cal. 458 [66 Am. St.
Rep. 49, 41 L. R. A. 467, 53 Pac. 918].)

It remains, then, to consider the sufficiency of the evi-
dence to support the finding of the court, construed as a
finding that the person who shot the insured did not in-
tend thereby to injure Fong Wing. In considering the
claimed insufficiency of the evidence to sustain this finding
it is to be remembered that the burden rested upon the de-
fendant to prove by a preponderance of the evidence the
facts necessary to bring the case within the purview of the
exception to the policy. [6] Of course, the burden was
upon the plaintiff to prove by a preponderance of the evi-
dence that the death resulted "through accidental means,"
as provided in the body of the policy. But this burden was
fully met when it was shown, without contradiction, that
the shooting did not follow as a natural or probable result
from anything done by the insured (*Richards* v. *Travelers'
Ins. Co.*, 89 Cal. 170, 175 [23 Am. St. Rep. 455, 26 Pac. 762];
*Jenkin* v. *Pacific etc. Ins Co.*, 131 Cal. 121 [63 Pac. 180];
*Price* v. *Occidental Life Ins. Co.*, 169 Cal. 800, 802 [147
Pac. 1175].) But on the issue raised by the claim of the
defendant that the insured died as the result of "injuries
intentionally inflicted" on him, the burden of proof rested
upon the defendant. (*Postler* v. *Travelers' Ins. Co.*, 173
Cal. 1, 3 [158 Pac. 1022].)

It is apparent from the evidence that the person who did
the shooting was at the time aiming at Fong Wing. From
this, either one of two conclusions could be drawn, either
that the shooter knew and recognized Fong Wing and in-
tended to shoot him, or that the shooter intended to shoot
someone else and mistook Fong Wing for that other person.
The evidence discloses nothing to indicate whether the
shooting was done from close at hand or from a great dis-
tance. It does show without contradiction that it occurred
after dark; that the street lamps were burning, but that
"it was not very light" at the point where Fong Wing fell.
Cases of mistaken identity are of the commonest occurrence

in every-day human experience even under the most favorable circumstances of light, proximity, and unobstructed vision. Even though it may appear to our minds more probable that the one who did the shooting intended to shoot Fong Wing, and that, therefore, the trial court should have found in favor of the defendant upon this issue, it was not compelled to so find under the evidence. **[7]** This court has frequently held that even though all the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there still remains in the case a question of fact to be determined by the jury (or by the trial judge where the case is tried without a jury), and that the verdict of the jury or the finding of the trial judge thereon cannot be set aside by this court on the ground that it is not sustained by the evidence (*Anderson* v. *Los Angeles Transfer Co.,* 170 Cal. 66 [148 Pac. 212]). In so far as the evidence is subject to opposing inferences, it must upon a review thereof be regarded in the light most favorable to the support of the judgment (*Woodard* v. *Glenwood Lumber Co.,* 171 Cal. 513, 519, 520 [153 Pac. 951]; *Hassell* v. *Bunge,* 167 Cal. 365, 367 [139 Pac. 800]). "In reviewing a question of this kind, all the inferences reasonably possible from the evidence favorable to the plaintiff [the prevailing party] must be indulged by this court." (*Bandle* v. *Commercial Bank of Los Angeles,* 178 Cal. 546, 547 [174 Pac. 44, 45].)

In this connection it may be pointed out that, even if it should be assumed that the plaintiff is bound by the verdict of the coroner's jury finding that the insured was murdered, that, in no way, compels the conclusion that the person who murdered him intended to injure *the insured.*

**[8]** The claimed errors of law all relate to rulings of the trial court in the admission and rejection of evidence. Defendant offered and the court received in evidence a certified copy of the certificate of death, which stated the cause of death of the insured as "homicide." Thereafter, when it appeared in evidence that there had been a physician in attendance upon the insured up to the time of his death, and that the certificate was not signed by this physician but by another who was not shown to have ever been in attendance upon the insured, the certificate was stricken out on plaintiff's motion, and of this the defendant complains.

Defendant relied in his brief on appeal upon the act of 1905, pages 115–122, as amended by the act of 1907, pages 296–300, and in its petition for hearing by this court, on the act of 1917, pages 717–728. Each of said acts contains a provision that a certified copy of a certificate of death made in accordance therewith "shall be *prima facie* evidence in all courts and places of the facts therein stated."

The certificate was, nevertheless, properly stricken out for the reason that each of the acts relied on provides that "the medical certificate [which states the cause of death] shall be made and signed by the physician, if any, last in attendance on the deceased," and the certificate herein was not so made or signed. Nor is the defendant aided herein by the provisions of section 1920, of the Code of Civil Procedure, because the certificate was not made by a public officer or by any other "person in the performance of a duty specially enjoined by law." It is further apparent that if the certificate had remained in evidence it could not have affected the result.

[9] Complaint is made that the trial court sustained plaintiff's objection to the following question: "As a matter of fact do you know that Fong Wing, prior to his being injured or killed, had been threatened on the part of certain tong leaders in Chinatown?" The objection was sustained on the ground that it was not cross-examination, but it was also objected to on the ground that it was incompetent. The answer to the question would involve at least three separate conclusions in the mind of the witness; as to what constitutes a "threat," as to who were "tong leaders," and as to whether or not a purported threat had been made "on the part of" such leaders. The ruling was correct, regardless of the considerations which prompted it.

Appellant complains of rulings excluding testimony as to the amount of money which had been demanded of the steamship company on one occasion, and the amount paid it on another occasion. Both questions were afterward answered, so that if there was any error it was cured.

[10] Appellant earnestly complains of a ruling sustaining plaintiff's objection to the following question: "Did you receive another anonymous letter on the day following the shooting of Fong Wing?" As suggested by plaintiff's counsel, if such a letter had been actually produced and

identified, stating, "I am the man who murdered Fong Wing," and if it had been proven to be signed by a man then living in San Francisco, it still would have been pure hearsay.

Enough has been shown to illustrate the character of the claimed errors. Suffice it to say, that we have considered all of the rulings claimed as erroneous which are not here specifically discussed, and in our opinion, they were correct. The trial court was extremely liberal in affording the defendant every opportunity to prove its claimed blackmailing conspiracy. It even went to the extent of permitting the defendant to introduce evidence to the effect that, six months prior to the shooting, the insured, with others, had complained to the chief of police concerning certain threats and had asked for police protection. As against the beneficiary who is here suing, this evidence was wholly incompetent and might properly have been excluded (*Jenkin* v. *Pacific etc. Ins. Co.*, 131 Cal. 121, 123 [63 Pac. 180]).

The judgment is affirmed.

Waste, J., Kerrigan, J., and Seawell, J., concurred.

LAWLOR, J., Concurring.—I concur in the judgment and in the opinion of Mr. Justice Myers except that for the reasons given in my dissent in the companion case (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269]) I am of the view there is ample support in the evidence for the finding herein that "Fong Wing received a bodily injury through external, violent and accidental means." In the face of this finding I do not think it can be said as matter of law "that the person who did the shooting was at the time aiming at Fong Wing."

LENNON, J., Dissenting.—I dissent. The evidence is not, in my opinion, sufficient to support the finding of the trial court that "It is not true that the death of said Fong Wing was caused wholly or directly by personal injury intentionally inflicted upon him." There is no doubt, from the evidence adduced, that the shot which killed Fong Wing was deliberately aimed at him. Whether the person who did the shooting intended to kill Fong Wing, or intended to kill some other person and under the mistaken

belief that Fong Wing was such other person shot and killed Fong Wing, it cannot be denied that he did intend to kill the body at whom he aimed. If it be true that the assailant was mistaken and the deceased was not the man he intended to kill, that he was not the man for whom he intended the bullet, this fact does not alter the result. His intent at the time was to shoot the man at whom he aimed, namely, Fong Wing. Any mistaken conception that Fong Wing was another person was formed before he fired at him. The intent of the assailant when he took aim and fired was to hit the man before him. Obviously, therefore, it was an injury intentionally inflicted upon the deceased, identified though he may have been in the mind of his assailant as the man whom his assailant believed him to be, and comes, therefore, in my judgment within the exception in the policy. If this be so then it follows that the finding is not supported by the evidence and the defendant is not liable.

Wilbur, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Lennon, J., who dissented.