[Civ. No. 2533.   Fourth Appellate District.—March 7, 1940.]

C. K. WAKEFIELD, as Administrator, etc., Respondent, v. C. K. WAKEFIELD, as Administrator, etc., Appellant.

Frederick W. Docker for Appellant.

Robert M. Barnard and E. Clarke Savory for Respondent.

MARKS, J.—This is an appeal from a judgment quieting plaintiff's title to fourteen shares of the capital stock of the American Telephone and Telegraph Company.

Daisy Bernhauer and Velma Stacey were mother and daughter. Daisy died on December 5, 1935, and Velma in February, 1936. C. K. Wakefield was appointed administrator of both estates. Counsel have expressly waived the question of the propriety of C. K. Wakefield as administrator of the estate of Velma Stacey, deceased, suing himself as the administrator of the estate of Daisy Bernhauer, deceased. We express no opinion on that question but merely assume that the action was properly brought and defended.

The case was tried and submitted on an agreed statement of facts which we will summarize as follows:

In August, 1935, Mrs. Bernhauer, suffering from cancer, was confined to her bed, which she was unable to leave up to the time of her death on December 5, 1935. In August, 1935, she called her attorney to her bedside and asked to be advised as to the best way to dispose of her property so as to avoid the expense of probating her estate. He advised her against making outright gifts, but instead, to make a will. He was instructed to prepare deeds conveying certain of her real property, he returned with the deeds on August 30, 1935, and they were signed and acknowledged. She also consulted him about disposing of the fourteen shares of stock of the American Telephone and Telegraph Company, saying she wanted her daughter Velma to have it. He advised "that she could transfer title to the stock to her by making a will, or by indorsing same and delivering it to Velma Stacey". He also advised "that if she attempted to transfer the stock by simply endorsing the certificate and keeping same in her possession that she would be 'cutting corners' and likely create difficulties". Mrs. Bernhauer endorsed the certificate in blank but had possession of it when the attorney left. "During all this discussion Mrs. Bernhauer maintained that she wanted Velma Stacey to have the stock."

Mrs. Bernhauer and Velma Stacey had a safe deposit box rented in both their names, to which Velma had access. Some time after August, 1935, and before the death of her mother, Velma placed a sealed envelope in this box. The envelope had written on it, in the handwriting of Mrs. Bernhauer, "The contents of this envelope belong to Velma Stacey—mother, Daisy Bernhauer. In case both Velma and I pass away, this goes to Henry D. Stacey, 3118 Sunset Boulevard, Houston, Texas."

When the safe deposit box was opened after the death of Mrs. Bernhauer the envelope containing the stock certificate was found in it. Evidently the stock certificate was then given to Velma because the stipulation recites that she unsuccessfully attempted to have it transferred to her name. The stipulation recites that "Velma Stacey was afflicted with tuberculosis, which caused her death in February, 1936."

Defendant urges that the agreed statement of facts does not support the judgment, in this: That there is no evidence of a sufficient delivery of the certificate by Mrs. Bernhauer to Velma; that there is no evidence showing when Mrs. Bernhauer placed the endorsement on the envelope; that there is no evidence that the envelope contained the stock certificate when the endorsement was written on it; that it then might have contained another document to which the endorsement referred; that the portion of the endorsement stating that the contents of the envelope "goes to Henry D. Stacey" in case of the death of both Mrs. Bernhauer and Velma showed the intention of the former to have retained a dominion over the stock which negatived the idea of a present gift; that there is a presumption of undue influence on the part of Velma which has not been overcome and which defeats the attempted gift.

As the endorsement of the stock and its delivery to Velma occurred during the last illness of Mrs. Bernhauer it may be properly classified as a gift *causa mortis*. In *Braun v. Brown,* 14 Cal. (2d) 346 [94 Pac. (2d) 348], it was said:

"Section 1149 of the Civil Code defines a gift in view of death 'as one, which is made in contemplation, fear or peril of death, and with intent that it shall take effect only in case of the death of the giver', and by section 1150 of the Civil Code a gift is presumed to be in view of death when made during the last illness of the giver or under circumstances which would naturally impress him with an expectation of speedy death. . . .

"Realizing, however, that under such circumstances any reference to or discussion of death is universally avoided by the patient, his friends and the doctor, section 1150 of the Civil Code declares that a gift made during the last illness or under circumstances which would naturally impress one with an expectation of speedy death is presumed to be a gift in view of death. This presumption is evidence and is sufficient to establish the fact unless rebutted."

The gift *causa mortis* is discussed in *Noble v. Garden,* 146 Cal. 225 [79 Pac. 883, 2 Ann. Cas. 1001], where it is said:

"Gifts *donatio mortis causa* had their origin in the civil law, and were adopted with slight modifications into the common law. (*Ward v. Turner,* 2 Ves. Sr. 431.)

"Justinian defines a *donatio mortis causa* as 'that which is made to meet the case of death, as where anything is given upon condition that, if any fatal accident befalls the donor, the person to whom it is given shall have it as his own; but if the donor should survive, or if he should repent of having made the gift, or if the person to whom it has been given should die before the donor, then the donor shall receive back the thing given'. . . . (Thornton on Gifts, sec. 20, and cases cited.)   It is there said: 'But in a gift *causa mortis* a written instrument is not necessary; it may be, and usually is made by parol, and the possession of the thing given must be absolutely delivered to the donee before the death of the donor and the donee. . . . The most characteristic mark of distinction between a legacy and such a gift is the change of possession.   From the nature of the *donatio,* it is apparent that the infallible test which must distinguish it from a testamentary gift, is delivery, a change of dominion *in praesenti.* Without this there is really nothing to distinguish it from an ordinary testamentary bequest.' "

Also in *Stout* v. *McNab,* 157 Cal. 356 [107 Pac. 1005], the Supreme Court said:

"A gift in view of death must be as absolute in its terms, so far as the donor and donee are concerned, as a gift *inter vivos.*   The difference between them is that the one is revocable by the giver and the other is not.   A gift in view of death may be revoked at any time by the giver, and it is revoked by law upon his recovery from the illness, or escape from the peril, under the presence of which it was made.   (Civ. Code, sec. 1151.)   Gifts of any other kind cannot be revoked by the giver.   (Civ. Code, sec. 1148.)   But the form of a gift in view of death is as absolute and unconditional as a gift *inter vivos.*   The title must pass to the donee at the time the gift is made and the donor must part absolutely with all control and with the title, subject only to the condition imposed by law that it may be revoked, in which case the title is regained by the giver.   (*Daniel* v. *Smith,* 64 Cal. [346] 349 [30 Pac. 575].)"

We think the inference drawn by the trial judge, that Mrs. Bernhauer had a present intention to make a gift of the stock to her daughter Velma, coupled with the actual delivery of the certificate to her with intention to vest title in her, is supported by the evidence.

We have the declaration of Mrs. Bernhauer to her attorney that "she wanted Velma to have the stock", coupled with the advice of the attorney that, if this purpose was not accomplished by means of a will, it could only be accomplished by the endorsement of the certificate and its unconditional delivery. It is admitted that the first step in the transfer, the endorsement of the stock, was accomplished in the presence of the attorney.

Next, the stock appeared in the possession of Velma in the sealed envelope on which was the endorsement, "The contents of this envelope belong to Velma Stacey—mother Daisy Bernhauer." This is evidence of an actual delivery with the present intention of vesting title in Velma, who retained possession of the certificate until after the death of her mother. (See *Hynes* v. *White*, 47 Cal. App. 549 [190 Pac. 836].)

■ The argument that the stock might not have been in the envelope when the endorsement was placed upon it and that the endorsement might have referred to other papers cannot be controlling and overcome the inferences drawn by the trial judge from the declarations of Mrs. Bernhauer, her endorsement of the certificate, its possession by Velma and the endorsement on the envelope. The argument inferentially charges Velma with fraud if not the commission of a crime,—the withdrawal of the document originally in the envelope and substitution of the endorsed stock certificate, if not the abstraction of the stock certificate from the possession of Mrs. Bernhauer without her knowledge or consent.

A person is presumed to be innocent of wrong and innocent of crime. (Sec. 1963, Code Civ. Proc.; *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269].) These presumptions support the inferences of intention to give, and of delivery, which were drawn by the trial judge.

■ The last sentence of the endorsement cannot overcome these inferences. That sentence might have referred to an understanding between Mrs. Bernhauer and Velma, that Velma would bequeath the stock to Henry. It might have been the expression of a desire on the part of Mrs. Bernhauer that Henry ultimately receive the stock. If we assume that Mrs. Bernhauer had knowledge of the rule of law revoking a gift *causa mortis* on the death of the donee prior to that of the donor, it might be construed as an attempt to dispose of the stock in that contingency.

Where the language of an instrument is uncertain and its meaning ambiguous, the province of construing it is first presented to the trial judge. The construction placed upon it will not be disturbed on appeal unless it be unreasonable and unjustified. The conclusion of the trial judge that the language used did not show an intent to retain dominion over the stock or to revoke the gift *causa mortis* is not so unreasonable that it can be disturbed here.

■ Defendant argues, under the well established rule, that where, as here, there is a confidential relationship existing between an ill mother and a daughter with whom she is living, and the daughter obtains property of the mother to which she asserts title after the death of the mother, there is a présumption of undue influence that will defeat the transaction unless overcome by satisfactory evidence. (See *Campbell* v. *Genshlea*, 180 Cal. 213 [180 Pac.. 336]; *Carleton* v. *Bonham*, 60 Cal. App. 725 [214 Pac. 503].)

While this rule is well established it is also true that the presumption is rebuttable and may be overcome by circumstantial as well as by direct evidence. ■ We have here only circumstantial evidence tending to rebut the presumption of undue influence. There are the admitted statements of Mrs. Bernhauer that she wanted Velma to have the stock and the advice of her attorney informing her of the legal manner in which the gift could have been consummated. There is the admitted fact that she endorsed the certificate in the presence of her attorney, thereby taking the first step in consummating the gift. There is the further stipulated fact that Velma was in actual possession of the certificate during the lifetime of her mother, coupled with the further fact that this possession was not disturbed by Mrs. Bernhauer during her lifetime. The strongest circumstance is the language used by Mrs. Bernhauer in her endorsement on the envelope that "The contents of this envelope belong to Velma Stacey." This is a declaration of present title that could have been vested in Velma only by prior acts sufficient to complete the gift.

We are of the opinion that these circumstances were sufficient to permit the trial judge to draw the conclusion that Velma had not exerted undue influence on her mother in obtaining the gift of the stock.

The rule governing appellate courts under the circumstances here presented is thus announced in *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 44, 26 A. L. R. 123]:

"This court has frequently held that even though all the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deduced from these facts, there still remains in the case a question of fact to be determined by the jury (or by the trial judge where the case is tried without a jury), and that the verdict of the jury or the finding of the trial judge thereon cannot be set aside by this court on the ground that it is not sustained by the evidence. (*Anderson* v. *Los Angeles Transfer Co.*, 170 Cal. 66 [148 Pac. 212].) In so far as the evidence is subject to opposing inferences, it must upon a review thereof be regarded in the light most favorable to the support of the judgment. (*Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513, 519, 520 [153 Pac. 951]; *Hassell* v. *Bunge*, 167 Cal. 365, 367 [139 Pac. 800]). 'In reviewing a question of this kind, all the inferences reasonably possible from the evidence favorable to the plaintiff (the prevailing party) must be indulged by this court.' (*Bandle* v. *Commercial Bank of Los Angeles*, 178 Cal. 546, 547 [174 Pac. 44, 45].)"

The judgment is affirmed.

Griffin, Acting P. J., and Thomson, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 6, 1940.