[Civ. No. 2831.   Fourth Dist.   Jan. 27, 1942.]

ADAH PALMER, Appellant, v. O. B. PALMER et al., Defendants; J. C. SWARTZBAUGH, Individually and as Guardian ad litem, etc., et al., Respondents.

Dempster McKee for Appellant.

Gray, Cary, Ames & Driscoll, Burton D. Wood and James C. Toothaker for Respondents.

MARKS, J.—This is an appeal from a judgment refusing to quiet plaintiff's title to property in the city of San Diego, and refusing to cancel a portion of a deed and awarding defendants Swartzbaugh a judgment lien on a one-half interest in the property.

The complaint contains three causes of action. The first is in the usual form of an action to quiet title. The second cause of action sought cancellation of a portion of a deed dated May 3, 1929, from Adah Palmer and O. B. Palmer, husband and wife, to Bernice F. Crawford, and a deed from Bernice F. Crawford to Adah Palmer and O. B. Palmer for reasons of (1) lack of consideration, (2) lack of delivery, and (3) because plaintiff did not know she was signing, and did not intend to sign a deed, but thought she was making a will. No attention need be paid to the third cause of action because no question is raised as to the propriety of the trial court's order granting a nonsuit as to it.

Besides denying numerous allegations of the complaint defendants Swartzbaugh asserted a lien on the property by

virtue of a judgment recovered on May 26, 1938, against O. B. Palmer, an abstract of which judgment was recorded on June 6, 1938. Mr. Palmer, a defendant in the action before us, was served with summons but made default.

The Palmers came to California from Iowa in 1912 or 1913. Mrs. Palmer brought $13,500 with her which admittedly was her separate property and represented her accumulations from a business she had conducted there. Mr. Palmer had been in business in Iowa, but the only result of those ventures were judgments against him.

Mrs. Palmer invested her funds in real estate in San Diego, taking title to the several parcels in her own name. It is not questioned that up to May 3, 1929, the real estate was her separate property. Mr. Palmer had a small business in San Diego which he conducted with questionable success.

At various times prior to 1929 Mr. Palmer had requested Mrs. Palmer to convey title to some of the property to him. Mrs. Palmer refused to accede to these requests. Some time prior to May 3, 1929, the couple learned that a neighbor whose husband had died was having trouble in getting his estate settled; that it was taking considerable time and costing her quite a sum of money. Mr. and Mrs. Palmer reopened the discussion of their own affairs, particularly concerning the property owned by her. On May 3, 1929, they executed a deed conveying the real property belonging to plaintiff, to Bernice F. Crawford, who in turn on the same day reconveyed the property to them as joint tenants. The deeds were recorded on the following day.

Mrs. Palmer testified that she decided to make a will in favor of Mr. Palmer; that she consented to have her husband consult an attorney about this matter; that he subsequently told her that he had consulted an attorney whom he knew but with whom plaintiff was not acquainted; that this attorney agreed to draw the will; that she and her husband went to the office of the attorney who had prepared documents for her signature; that there were a number of papers there; that she told the attorney that she did not know what the papers were; that "What I was looking for was a will"; that the attorney said to her, "Well, Mrs. Palmer, this will cover exactly what you want"; that she replied that she wanted "a will and nothing more than that." She also testified that she told the attorney that what she expected was a

will but that the paper given her to sign was different from what she expected; that she glanced through the paper and it was not what she expected, namely, a will; that nevertheless she signed it. The document she signed was the deed conveying her property to Bernice F. Crawford. She further testified that she did not see either this deed or the deed from Miss Crawford until early in 1938 and she did not know she had signed a deed until about that time.

Mr. Palmer was called as a witness for plaintiff for cross-examination under the provisions of section 2055 of the Code of Civil Procedure. He proved a most willing witness for plaintiff. He corroborated her testimony in many important particulars. He testified that Mrs. Palmer wanted to execute a will; that he knew when the deed to Bernice F. Crawford was signed that it was not a will but a deed; that for the first time in his life he put something over on his wife.

The attorney who prepared the deeds was called as a witness. He testified that he had been attorney for Mr. Palmer but had not met Mrs. Palmer prior to May 3, 1929. He further testified that "Mr. Palmer came to the office one day just prior to the execution of these joint tenancy deeds. He seemed perturbed—told me that a neighbor lady had been having some trouble over her husband's estate, and was not able to get any money out of it, and it was costing her a lot of money. He wanted to know if there was any way that his and Mrs. Palmer's estate could be fixed so as to avoid that kind of trouble in the event of the death of either of them. I told him my property was in joint tenancy; that in my opinion a joint tenancy estate would be the best for them. I told him also that in the event of the death of either one of them the entire estate would go to the survivor; there was probably more said, but that is the gist of the conversation at that time. Q. After this conversation with Mr. Palmer, did you prepare the joint tenancy deeds? A. Yes, I did." He further testified concerning conversations on May 3rd: "Mrs. Palmer referred again to the neighbor lady's difficulty over the probate matter; she wanted to be assured that what I was proposing to do would avoid probate, and avoid the trouble that the neighbor was having. At that time she told me that the houses—the property that was described in the deed—it was her separate property; that she had accumulated the money that bought those houses in the nursery busi-

ness back in Iowa some place. She wanted to know what the effect would be in case of the death of either of them. She said that Mr. Palmer had told her that I had told him (which is a lot of hearsay, of course), that in the event of the death of either one of them the estate would go to the survivor. I told her that that was correct. Q. Was there anything further said in that conversation that you recall by Mr. Palmer or Mrs. Palmer and yourself? A. I told Mrs. Palmer that my own and my wife's property was in joint tenancy. I felt that that was the best solution to the problem. Q. Did Mr. Palmer make that remark at that time, that you could be trusted to do what was right in the matter? A. My recollection is that he did say something along that line. I don't know just what it was. Q. In substance, that they could safely leave the matter in your hands? A. Yes, something of that sort. . . . Q. She did tell you, I believe you said, that Mr. Palmer had told her that you had recommended placing the property in joint tenancy? A. Yes, she said that. Q. She told you that he had said that on the death of either one of them the property would go to the survivor? A. Yes, she asked me if that was right. Q. She asked you if that was right? A. Yes. Q. And you told her that it was? A. Yes. Q. She also told you that Mr. Palmer had told her that you had said that handling it in that way was saving delay in case of the death of either one of them, and would save costs in the event of the death of either one of them, and would save taxes, perhaps; is that right? A. I don't remember—I don't think there was anything said about taxes. Whether she asked me that or whether I told her—yes, I did tell her that in the event of the death of either one of them it would be a very short procedure and rather inexpensive in comparison with probate, and that they would not be tied up so long. Q. And you told her that the way this transaction was handled was by giving the deed—giving of the deed to a third person to operate as a conduit of title, and then deed back from that person to them as joint tenants, did you not? A. In substance, I probably did tell that I had prepared the deed to my stenographer and from the stenographer back to them. I showed her the way the deeds were prepared, and showed her the deeds.''

It is also in evidence that Mrs. Palmer had bought and sold property in Iowa and had given and received deeds

there; that on four occasions she had bought property in California and had received and kept the four deeds conveying the respective properties to her. It is also in evidence that for twenty years she had conducted a business in Iowa. She had executed a number of wills.

It may be observed that on direct examination Mrs. Palmer appeared to be a witness of average intelligence and possessed of a good memory. On cross-examination her memory was bad and she was evasive to an extreme degree. This may be one of the reasons why the trial court seemed to give little weight to her testimony.

On October 8, 1937, Mr. Palmer was involved in an automobile accident. On March 5, 1938, J. C. Swartzbaugh and Jack Swartzbaugh brought suit against him for damages resulting from this accident. The case was set for trial on May 12, 1938, and went to trial on that day. At the conclusion of the trial the trial judge announced judgment for plaintiffs. On May 26, findings of fact and conclusions of law were filed reciting that plaintiffs were entitled to judgment in the total sum of $15,360.55. Judgment was signed and filed on the same day.

On May 11, 1938, Mr. and Mrs. Palmer signed, acknowledged and had recorded a declaration of homestead on Lots 36 and 37 in Block B of Wallace Heights Tract in San Diego. These lots compose one of the tracts described in the deed from Mr. and Mrs. Palmer to Bernice F. Crawford and in her deed to them as joint tenants. This property is not described in the complaint filed in this action.

On May 24, 1938, plaintiff Adah Palmer executed a grant deed conveying to Rosa L. Keller "my undivided one-half interest" in the property described in this complaint, being the same property described in the deeds to and from Bernice F. Crawford, excepting the property described in the declaration of homestead. On the same day Rosa L. Keller reconveyed this property to plaintiff. These deeds were recorded on June 2, 1938.

The trial court found all necessary facts in favor of the Swartzbaughs and that they had a valid and enforceable lien on an undivided one-half interest in the property described in the complaint. It was also particularly found that prior to May 3, 1929, the property belonged to plaintiff as her separate property; that "it is true that said grant deeds (of May 3,

1929) were and are, and that each of them was and is, valid in every respect; that it is not true that said plaintiff at the time of the execution of the grant deed first in this paragraph mentioned, or at any other time or at all, either did not know that she was executing a deed to said real property or did not intend to execute a deed thereto, but on the contrary that it is true that at said time the said plaintiff knew that she was executing such a deed and intended to execute such a deed; that it is not true that at said time the said plaintiff believed said grant deed first in this paragraph mentioned to be a joint will or any other instrument other than a grant deed; that it is true that the grant deed first in this paragraph mentioned was executed and delivered by said plaintiff and the said O. B. Palmer to the said Bernice F. Crawford for the purpose of vesting title to the real property described therein in the said Bernice F. Crawford as a conduit of title for the purpose of conveying title thereto to said plaintiff and the said O. B. Palmer as joint tenants, which last mentioned purpose was effectuated by the execution and delivery, as aforesaid, of the grant deed by the said Bernice F. Crawford to said plaintiff and the said O. B. Palmer, as hereinabove mentioned. . . . That it is true that the execution and delivery of said grant deeds, and each of them, were the result of an idea conceived by said plaintiff, and were not the result of any suggestion by or on the part of the said O. B. Palmer, or of anyone other than the said plaintiff acting under and pursuant to the advice of her attorney.''

There is no attack made on the deed from plaintiff to Rosa L. Keller nor upon the deed from her to plaintiff. It follows that the joint tenancy to the property described was thereby broken and that the property was thereafter owned by plaintiff and O. B. Palmer as tenants in common.

The trial court drew the conclusion of law that plaintiff could take nothing by her suit and rendered judgment against her, and that the Swartzbaughs had a valid and enforceable lien upon the one-half interest of O. B. Palmer in the property.

Plaintiff's principal ground of attack on the judgment is that the evidence fails to support the findings. Of course, if the testimony of Mr. and Mrs. Palmer be accepted as true in its entirety, and if contrary evidence and infer-

ences to be drawn from the evidence were rejected, we would have to agree with plaintiff and reverse the judgment.

As we have observed, plaintiff furnished some ground for doubting her credibility by her attitude on the witness stand. Mr. Palmer impeached himself when he admitted that he had deliberately attempted to defraud his wife in the transaction of May 3, 1939.

The testimony of the attorney who prepared the deeds clearly indicates that Mrs. Palmer knew she signed a deed and not a will. To a certain extent Mrs. Palmer admitted the truth of this evidence when she grudgingly admitted that she glanced through this paper and knew when she signed it that it was not what she expected. She testified she expected a will.

Mrs. Palmer was not a person entirely ignorant of business affairs. She had conducted a successful business for twenty years in Iowa before coming to California. She had given and received deeds conveying real property. She took entire charge of her property in California and had paid mortgages on it. She had possession of the four deeds conveying title to the San Diego properties to her, the first of which was given in 1914. She had executed several wills.

When plaintiff conveyed "my undivided one-half interest" in the described property to Rosa L. Keller she certainly recognized that she was not the owner of the full title to the property, but that she had a co-tenant with a vested interest in it.

It should be worthy of note that the deed to Bernice F. Crawford and her deed to Mr. and Mrs. Palmer conveyed not only the property described in the complaint but also the property described in the homestead. How the fraud and mistake could go only to property not covered by a homestead, and not to property covered by a homestead and therefore exempt from execution, when all of the properties are described in the deed under attack, is not easy to understand.

It' is of course true that if the evidence is conflicting, and there is substantial evidence in the record supporting the findings and judgment, an appellate court cannot reverse the judgment because of conflicts in the evidence.

The evidence of the attorney who drew the deeds dated May 3, 1929, clearly shows that plaintiff knew she signed a deed and not a will. The only question not covered by his

evidence is whether or not it was explained to Mrs. Palmer that the deed she signed would vest a present estate in the property in Mr. Palmer.

■ There is a further rule that must control on this appeal. It is stated in *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123], as follows: "This court has frequently held that even though all the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there still remains in the case a question of fact to be determined by the jury (or by the trial judge where the case is tried without a jury), and that the verdict of the jury or the finding of the trial judge thereon cannot be set aside by this court on the ground that it is not sustained by the evidence (*Anderson* v. *Los Angeles Transfer Co.*, 170 Cal. 66 [148 Pac. 212]). In so far as the evidence is subject to opposing inferences, it must upon a review thereof be regarded in the light most favorable to the support of the judgment (*Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513, 519, 520 [153 Pac. 951]; *Hassell* v. *Bunge*, 167 Cal. 365, 367 [139 Pac. 800].) 'In reviewing a question of this kind, all the inferences reasonably possible from the evidence favorable to the plaintiff [the prevailing party] must be indulged by this court.' (*Bandle* v. *Commercial Bank of Los Angeles*, 178 Cal. 546, 547 [174 Pac. 44, 45].)''

There are strong inferences to be drawn from the evidence that Mrs. Palmer knew the legal effect of deeds and knew that the deeds of May 3, 1929, vested a present estate in her property in O. B. Palmer. We have already summarized that evidence and it is unnecessary to repeat it here. Under the rule last quoted we must also draw those inferences here and must conclude that the findings of fact and that portion of the judgment establishing a valid lien in favor of the Swartzbaughs on an undivided one-half interest in the property described in the complaint and judgment is supported by substantial evidence and must be affirmed.

■ It is not questioned here and it was not questioned in the court below that plaintiff was and is the owner of an undivided one-half interest in the property described in the complaint. The trial court so found and that finding is supported by the evidence. It follows that plaintiff was entitled to have her title to an undivided one-half interest in the prop-

erty described in the complaint quieted in her. The portion of the judgment to the contrary cannot be supported.

The portion of the judgment establishing the lien of the judgment in favor of J. C. Swartzbaugh and Jack Swartzbaugh on the one-half interest of O. B. Palmer in the property described in the complaint and judgment is affirmed.

The portion of the judgment denying plaintiff any relief and refusing to quiet her title to an undivided one-half interest in the same property is reversed with instructions to the trial court to modify its conclusions of law and judgment in accordance with the views just expressed and to enter judgment accordingly.

Neither party will recover costs of appeal.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 27, 1942.