[Civ. No. 6323. Third Appellate District.—January 12, 1940.]

THE TEXAS COMPANY (a Corporation), Respondent, v. GERTRUD WIECZOREK, Appellant.

Victor Ford Collins for Appellant.

Charles C. Stanley, J. A. McNair, J. A. Tucker and E. S. Williams for Respondent.

TUTTLE, J.—This action was one for declaratory relief in respect to an oil lease. The trial court adopted the construction of the lease contended for by respondent, holding

that the lease was not terminated, and was in full force and effect until the end of the term. It also found that defendant was estopped by a subsequent agreement, from contending and maintaining that the lease was terminated. Findings in favor of respondent upon all issues were made, and judgment was entered accordingly. Defendant now appeals from the judgment.

The complaint sets forth the controversy between the parties in the following allegations:

"That defendants on the 27th day of December, 1932, for the first time claimed, and do still claim, that if and when plaintiff ceases further drilling of additional wells upon the leased premises, it is obligated to surrender said lease except areas of five acres surrounding each producing well and excepting the producing wells and appurtenances thereto. Defendants also claim that plaintiff has ceased further drilling of additional wells upon the leased premises and that it must immediately elect and designate the five acres surrounding each producing well which it intends to retain, and thereupon, subject to the other provisions of the paragraphs of said lease last hereinabove quoted, surrender the said lease with the exceptions above mentioned.

"Plaintiff claims that the provisions of said lease quoted in Paragraph XVI of this complaint have no application after plaintiff has drilled and completed on the leased premises three 'paying wells'. Plaintiff further claims that by reason of its having drilled said paying wells as aforesaid and of the provisions of said lease, particularly the provisions thereof quoted in paragraph XI hereof, plaintiff is entitled to hold and retain the whole of said leased premises until July 20, 1940, and thereafter so long as petroleum oil and kindred substances are produced by plaintiff in paying quantities from the leased premises or any part thereof by means of any well or wells or other works constructed or in the course of construction on the 20th day of July, 1940, without drilling any additional wells.

"Plaintiff further claims, even though it be conceded that under the provisions of said lease it was obligated, as claimed by said defendants, to so surrender said lease upon the cessation of drilling additional wells, and even though it be conceded that plaintiff has ceased the drilling of additional wells, that then, such cessation of drilling occurred prior to the 6th

day of October 1932, and that by said instruments of release hereinabove referred to defendants have forever discharged and released plaintiff from the duty to so surrender said lease, the leased premises, or any part thereof, and that by said instruments of release defendants are estopped from demanding or enforcing performance of any such alleged duty to so surrender said lease, the leased premises or any part thereof.

"Plaintiff further claims that defendants by permitting plaintiff from time to time to again commence drilling after a cessation of drilling for a long period of time, and by accepting the royalties accruing from the said wells so drilled, have forever waived all right to demand or to enforce performance of any such alleged duty to so surrender said lease, the leased premises, or any part thereof.

"Plaintiff further claims that it has fully and completely performed and kept each and every covenant and condition imposed upon it by said lease, and that it is not and never has been under any duty to surrender to defendants or either of them, said lease, the leased premises or any part thereof."

Defendant filed a cross-complaint. The first cause of action relates to the construction of lease No. 3, the one mentioned in the complaint. She alleges that there was a cessation of drilling, and that it is the duty of plaintiff to surrender the lease. She also asks that this lease be construed in respect to the rights of the parties (as fixed by the lease) when a termination of the lease takes place. The second cause of action is the same, except that it relates to lease No. 2. Other causes of action are stated, but they are not involved in this appeal.

We do not deem it necessary to dispose of the contentions which relate to a construction of the terms of the lease, except as to those provisions which are necessarily involved in considering the question of estoppel.

On October 6, 1932, appellant, for a consideration of $100,000, executed an agreement with respondent, relating to said lease No. 3. This agreement, after reciting that:

"Whereas, a controversy has arisen and now exists between the parties hereto, as to the computation and payment of royalties and other matters; and

"Whereas, it is the desire of the parties hereto to forever settle said present controversy and claims, and to that end,

they are desirous of reducing to writing their agreement of settlement," contains the following pertinent paragraph:

"Lessor hereby acknowledges full and complete performance by lessee of all of the terms, obligations, conditions and provisions of said leases, express or implied, which have matured or should have been performed by lessee prior to the date hereof. Lessor does hereby release and forever discharge lessee of and from all claims and demands which have heretofore arisen or been asserted or which lessor could or might assert growing out of any breach or alleged breach of any obligations, condition, liability or duty, express or implied, in connection with the operations under said leases, payment of royalties, drilling of wells, development of the leased premises, or any other matter or thing connected with said leases, and/or the operations of lessee . . . upon the leased premises. This agreement, however, does not release, and is not intended to release the lessee from performing the terms, obligations, conditions, and provisions of said leases, hereafter accruing in accordance with said leases. It is the intention and purpose hereof that the rights of the parties in the future shall be governed according to the terms, obligations, conditions and provisions of the respective leases above described. The lessee likewise hereby releases the lessor from any claims that lessee may have, or claim to have to date by reason of said oil leases above described. The release of the lessee herein contained is not intended to release it from payment of unpaid current royalties, payable on account of production as shown on statement dated August 31st, 1932, and subsequent thereto."

On the matter of the effect of this agreement, the trial court made the following finding:

"That said defendants by said agreements of October 6, 1932, and of December 29, 1932, have, and particularly said defendant Gertrud Weiczorek by said agreement of October 6, 1932, has, forever discharged and released the lessee under said lease, to-wit: the plaintiff herein, from the duty to surrender said lease or said leased premises, or any part thereof, and are and is estopped from demanding or enforcing the performance of any alleged duty so to surrender said lease or said leased premises, or any part thereof, by reason of any alleged cessation of the drilling of new or additional wells

upon said leased premises which prior to the date of the commencement of this action may have occurred.''

It will be observed that this controversy arose over the question whether or not, after respondent had drilled three paying wells, and thereafter had ceased to drill more new wells, the lease terminated. Respondent contended, and the trial court found, that after it had drilled three paying wells, the lease would be effective until the end of the term without any obligation on its part to drill more new wells, and it was optional with respondent whether it would drill further thereafter.

There is no evidence of the nature of the dispute which precipitated the execution of the agreement, other than the recitations contained therein, but it appears to be broad enough to cover any and all controversies over the terms of the lease and the performance of its terms. Under the familiar rule, it is our duty to indulge in all inferences which will uphold the findings. It may be fairly inferred that the matter here in controversy was in the minds of the parties when the agreement was executed. This is reasonable and plausible, because it is an admitted fact that all drilling of new wells ceased on August 2, 1930, and that there had been no such drilling for a period of some twenty-six months prior to the date of the agreement. Appellant does not contend that she had no knowledge of such cessation of drilling.

The agreement was a contract by the lessor that the lessee had fully and completely performed all of the terms, obligations, conditions and provisions of the lease, express or implied, which had matured or should have been performed by the lessee prior to the date thereof. This was a declaration that the lessee had not been under any duty to surrender the lease, or if the lessee had been, that duty now was released. Under the defendant's (lessor's) construction whenever there was a cessation of further drilling the lessee became obligated thereupon to surrender the lease except for the five-acre areas. The failure to do this would be a failure of performance of the terms and provisions of the lease and a breach of those terms and provisions. But the agreement of settlement declares and thereby contracts that the lessee has fully performed all terms and provisions. This contract provision also was a recognition that at that date the *whole* lease was in full force and effect and that by nothing

which previously had occurred was the lease to be deemed defeated or forfeited in whole. or in part. Certainly there is no hint in this agreement that any party thereto suspected that any part of the lease had terminated—rather quite the contrary. And that no new wells had been drilled since August 2, 1930, was a patent fact.

It is the rule that "a valid release conclusively estops the parties from reviving and litigating the claim released". (53 C. J., p. 1244, sec. 66.) It thus appears that when the agreement was executed there had been a cessation of drilling by respondent for a period of over two years, and that this fact was known to appellant. It is contended by appellant that although the lease provides that "after the completion of the first well or any subsequent wells herein provided for, the lessee may at its election at any time, cease further drilling, but shall thereupon surrender this lease, and this lease shall thereupon terminate—", a mere *physical* cessation from drilling is not sufficient to make such provision effective, and that something additional must be proven—to wit, a positive declaration from the lessee showing his mental attitude and evincing an intention to cease drilling. We do not believe the plain language of the lease can be thus frustrated, and hold that when, in fact, drilling ceased, the above provision would give appellant the right to insist upon a surrender and termination of the lease, provided that a consideration of the whole lease would impel a different construction —a matter we are not here deciding. Such a right, assuming, with appellant, that the entire lease should be thus construed, existed when the agreement was entered into, and its exercise was waived by the plain terms of such agreement. It is further contended by appellant that although there was a cessation of drilling within the contemplation of the lease, appellant was not called upon to take any positive action, for the reason that the lease terminated *ipso facto* when the drilling ceased. They urge that cessation created no default, but left the lease effective in respect to the wells already drilled, as expressly provided therein. This may be so, but nevertheless certain rights of respondent under the lease—the right to drill new wells in new ground—would be definitely cut off and nullified by the cessation. It was the power of appellant to insist upon the deprivation of this right which was waived and lost when the agreement was signed.

The finding that appellant is estopped from asserting that the lease was terminated from failure to continue further drilling is sustained by ample evidence, and accordingly the judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 9, 1940, and the following opinion then rendered thereon:

THE COURT.—It is strongly urged in the petition for rehearing that the "rights of lessor to take over certain undeveloped portions of the property on cessation of drilling were for the sole benefit of lessor, and were continuing rights that could be exercised by lessor at any time after cessation". Assuming this to be so, the right to exercise this option and demand a surrender of the lease (with the exception of certain five-acre tracts upon which there were producing wells), was waived by the instrument of release, there having been a complete cessation of drilling for some two years prior to the execution of said agreement. We held the trial court properly found that the release estopped defendant from thereafter asserting a right which had been thus waived.

The rehearing is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 11, 1940.