[Civ. No. 11690. First Dist., Div. Two.—June 19, 1941.]

GERTRUD WIECZOREK, Plaintiff and Appellant, v. THE TEXAS COMPANY (a Corporation), Respondent; SECURITY–FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Defendant and Appellant.

Victor Ford Collins for Appellants.

Charles C. Stanley, J. A. Tucker, R. K. Barrows and E. S. Williams for Respondent.

NOURSE, P. J.—The plaintiff sued for declaratory relief and for damages for the alleged breach of a written contract. The defendant Security-First National Bank of Los Angeles filed an answer admitting all the allegations of the complaint and joined with the plaintiff in a prayer for the same relief which she sought, the position of the bank being that of an assignee of a portion of the interest in the oil lease hereafter referred to. Judgment went for the defendant, The Texas Company, from which the plaintiff and the bank joined as appellants on one set of briefs. We will refer herein to Mrs. Wieczorek as the appellant.

On July 20, 1920, an oil and gas lease on land located at Santa Fe Springs was made by William A. Matern and Gertrud Matern, his wife, as lessors and owners to a corporation lessee the name of which was thereafter changed to The Texas Company. After the death of William A. Matern his wife succeeded to his interest in the property, married again, and is now known as Gertrud Wieczorek. Two other leases were executed between the same parties at the same time, but this litigation involved lease No. 3 only. This lease contained the following clause which is pertinent to the litigation: "In the event of the abandonment of any well or wells hereafter drilled upon the said premises, the lessee shall immediately notify the lessors of that fact, and shall not remove any casing therefrom without first affording the lessors the opportunity of purchasing said casing, or a portion thereof (it being understood that the lessee shall not be obligated to leave any portion in the well unless the balance of said casing can be removed in accordance with customary methods) and if the lessors desire to purchase the same they shall, within ten (10) days after receiving such notice, pay the lessee for the casing desired the market price of similar second hand casing of like size and gauge; and the lessors shall thereafter be entitled to the full and exclusive possession of such well."

The lessee promptly commenced drilling upon the premises and in the course of its operations five of sixteen wells which it had drilled were abandoned by the lessee. These wells were No. 1, No. 3, No. 6, No. 7 and No. 8. No. 3 was aban-

doned in 1926, No. 7 and No. 1 in 1927, No. 8 and No. 6 in 1928. At the time of the abandonment of each of said wells respectively the plaintiff had actual notice and knowledge of such abandonment and either expressly or by implication notified the lessee that she had no desire or intention to avail herself of the privilege of purchasing the casing or any portion thereof or of taking possession of any of the wells so abandoned. From the commencement of production on the lease the lessor kept a detailed written record of the daily production of each well. When well No. 3 was abandoned in 1926 the lessor wrote in red ink in the margin opposite the entry of that well in the production record the word "abandoned". This record as kept by the lessor disclosed that for several months prior to the date of abandonment the well showed a diminishing return. The stipulation of the parties filed herein discloses that the quantity of water produced from the well had increased so that the well was then cutting 93.2 per cent prior to its abandonment. This well had been plugged back from 4,655 feet to 3,885 feet in an effort to avoid these unfavorable conditions and to render the well productive.

In the same record of daily production kept by the lessor a vanishing rate of production of wells No. 1 and No. 7 was shown for a considerable period prior to their abandonment in January, 1927, and the parties have stipulated that 90 per cent of the fluid produced from well No. 1 was water and that 67 per cent of that produced from well No. 7 was water. Prior to the abandonment of each of these wells the lessee contacted the lessor and inquired whether the latter desired to purchase the casing in either of those wells. The lessor thereupon informed the lessee that she did not desire to purchase such casing and that the lessee might proceed with the abandonment of both wells. In April, 1928, the lessee notified the lessor in writing of the intention to abandon wells No. 8 and No. 6 and inquired whether the lessor desired to purchase the casing in either of these wells. The lessor notified the lessee in writing that she did not desire to purchase such casing and thereupon the abandonment was completed in accordance with the terms of the lease. In the same record of daily production kept by the lessor well No. 6 did not show any production since September, 1927, and well No. 8 showed none since March, 1928. When each of the five wells was

abandoned the regulations of the state mining bureau were complied with and in each instance the well was inspected and the abandonment approved by the state engineers. These wells were then reported as abandoned in the public records of the state mining bureau. After the abandonment of the five wells the lessee drilled and put into production a new well in the immediate vicinity of each of those abandoned and these were on production at the time of the trial.

On October 6, 1932, to settle controversies between the parties relative to lease No. 3 an agreement settlement was made in writing between the lessor and lessee covering all three leases to these premises. A consideration of $100,000 was paid to the lessor and in December, 1932, a similar agreement was made with the bank covering the latter's interest in lease No. 3. In this agreement the lessor acknowledged "full and complete performance by Lessee of all of the terms, obligations, conditions and provisions of said leases, express or implied, which have matured or should have been performed by Lessee prior to the date hereof. Lessor does hereby release and forever discharge Lessee of and from all claims and demands which have heretofore arisen or been asserted or which Lessor could or might assert growing out of any breach or alleged breach of any obligations, condition, liability or duty, express or implied, in connection with the operations under said leases, payment of royalties, drilling of wells, development of the leased premises, or any other matter or thing connected with said leases, and/or the operations of Lessee . . . upon the leased premises." Soon after this settlement was made the lessor again made demands upon the lessee claiming a forfeiture by reason of acts which had occurred long prior to the date of the settlement. Because of these demands the lessee on March 24, 1933, brought an action in declaratory relief, and in *The Texas Company* v. *Wieczorek*, 36 Cal. App. (2d) 560 [98 Pac. (2d) 547], the District Court of Appeal held that the lessor had waived all right to make any claim of forfeiture by reason of acts committed by the lessee prior to the execution of the instrument and that through this instrument the lessor was estopped from thereafter asserting a right which had thus been waived.

The trial court herein found that the lessor had actual notice and knowledge of the abandonment of each well at the time it was done and that she had no desire or intent to purchase any of the casing from such wells at the time of

abandonment or at any time thereafter. It found that the lessor did not at any time have or express any desire to take over possession of any one of the abandoned wells and that she expressly waived any duty or obligation on the part of the lessee to notify her in writing of the abandonment. It also found that none of these abandoned wells had any value whatever after April 4, 1933; that the lessor would not have made any profit out of them if she had had possession and that she was not injured or damaged in any respect through the operations of the lessee because each of said wells was exhausted and no longer capable of producing oil or gas in paying quantities. The trial court further found that the lessor was estopped to claim that the lessee did not notify her of the abandonment of each of these wells in all respects as required by the terms of the lease and that she was estopped to claim that the lessee had removed any casing from the wells before first affording her the opportunity of purchasing same. It was then found that plaintiff's action was barred by eight different sections or subdivisions of the Code of Civil Procedure relating to the limitation of actions. All these findings of fact find ample support in the evidence. There is no real contention to the contrary, the appellant merely stating that it is incumbent upon respondent on this appeal to bring forth the evidence upon which the findings are based.

The grounds raised by the appellant are: (1) That since the lease required notice of abandonment to be given in writing no other notice or knowledge may be taken as a substitute. (2) That the settlement agreement did not operate as a waiver of the claims herein advanced because "the cause of action" herein arose after the date of that agreement. (3) That the trial court erred in finding that the lessor was estopped to contend that the notice of abandonment was not given and that it erred in holding that the action was barred by the statute of limitations.

The argument of respondent in brief is that notwithstanding the provisions of the contract requiring written notice of the abandonment the undisputed evidence is that the lessor had actual notice and knowledge long prior to the settlement agreement of October, 1932. It is also argued that the lessor led the respondent to believe that written notice would not be required when she notified the respondent in each

instance that she did not desire to purchase the casing and had no objection to the abandonment.

The respondent argues the statute of limitations from the two alternatives left to the appellant in relation to the nature of her causes of action: (1) Either that notice of abandonment was given, in which event there was no default or breach of contract or (2) that the lessee did not notify the lessor of its intention to abandon, rip out or destroy the casing, and had closed the wells without affording the lessor opportunity to purchase the casing as required by the contract. In this event the respondent argues that there was a default or breach of contract at the time the acts were done and that since there is no allegation or proof of fraud, concealment or imposition of any kind the cause of action for damages for breach of contract arose at the time of the breach and is therefore barred by the statute of limitations.

It would serve no useful purpose to discuss or to enumerate the many arguments advanced by appellant in her attack upon the judgment. She joined two causes of action—one for declaratory relief, and one for damages for breach of contract. The first being an action sounding in equity the attack must disclose an apparent breach of discretion on the part of the trial court in view of the provisions of section 1061 of the Code of Civil Procedure, which declares that the trial court may refuse the relief when a declaration "is not necessary or proper at the time under all the circumstances." The demand for damages for the breach of the contract is so clearly barred by the statute of limitations that the appellant scarcely makes any attempt to defend it. Under these circumstances we will confine our opinion to special reasons which compel an affirmance of the judgment, and will not indulge in the needless repetition of elementary principles of law.

■ Conceding that the lease required notice of abandonment to be in writing the respondent proved by undisputed evidence that the appellant and her agents not only had actual knowledge of the intention to abandon, but in each case gave express notice that purchase of the discarded casings was not desired. Appellant's answer to this damaging state of the record is that it is sufficient for an appellant to merely state that the evidence does not support any finding of the trial court—that it then is incumbent upon the respondent to prove that every finding is sound. This is not in accord

with the accepted rule of practice. The rule to the contrary is found in 2 California Jurisprudence, page 730, where it is said: "When it is contended that the evidence does not sustain the findings, the appellant must point out in his brief the evidence, . . . and he must show wherein the evidence does not sustain the findings." In accord are *Sutro Heights Land Co.* v. *Merced Irr. Dist.,* 211 Cal. 670, 687 [296 Pac. 1088]; *Erro* v. *City of Santa Barbara,* 123 Cal. App. 508, 513 [11 Pac. (2d) 890]; *Glass* v. *City of Fresno,* 17 Cal. App. (2d) 555, 559 [62 Pac. (2d) 765]; *Angelus Securities Corp.* v. *Ball,* 20 Cal. App. (2d) 436, 438 [67 Pac. (2d) 158].

These principles apply particularly to the finding that "plaintiff at the time of and at all times from and after the abandonment of each of said wells respectively had notice and knowledge of such abandonment and at no time whatever had any desire or intent to purchase any casing in any of said wells. . . . " Appellant states that this finding is "not sustained by one iota of evidence." But two of her own witnesses gave positive evidence of their knowledge of each abandonment at the time made; the latter testified that he gave his consent and approval before the work of abandonment was commenced, and that he notified respondent that the lessor did not desire to purchase the casings. These two witnesses were attorneys in fact of the appellant, who had so designated them in writing to the respondent at a time when she notified respondent to deal with these agents exclusively in reference to all matters arising under the lease. In addition to this there is in evidence a written notice of intention to abandon two of the wells sent to her by registered mail, receipted for by her agent, and replied to by letter sent by one of her agents under a letter head displaying the names of the appellant and both of her agents all under the same address— that to which the written notice of abandonment had been mailed and received. In view of the allegations of the complaint that "no notice *of any kind or character* had been given from the said defendant, The Texas Company, to the plaintiff herein of the abandonment of said wells, *or any of them*; that at no time prior to March 27, 1933, did the plaintiff herein know that the said defendant had abandoned wells Nos. 1, 2, 3, 6, 7, and 8, *or any,* or all of them" this admission of the receipt of the written notice would have justified a

rejection by the trial court of the adverse testimony offered by appellant.

The evidence of oral notice of the intention to abandon wells Nos. 1, 3, and 7, and of the written notice covering wells Nos. 6 and 8, both followed by the expressed consent and approval of the appellant, fully sustains the judgment under both of the two related theories of waiver and estoppel. By consenting to the abandonment and notifying respondent that she did not desire to purchase the casings the plaintiff waived any written or formal notice in the terms of the lease. By consenting to the abandonment and permitting the respondent to close and obliterate the wells the appellant is estopped from now asserting to the contrary. This is the true purpose and meaning of subdivision 3 of section 1962 of the Code of Civil Procedure. On September 11, 1933, the appellant filed her answer and cross-complaint in *The Texas Company* v. *Wieczorek, supra.* Therein she alleged in detail the exact date of abandonment of each of these five wells. She now concedes that she then had knowledge of these facts. The present action was commenced on November 20, 1935. The trial was held in April, 1938. After the admitted knowledge of abandonment and down to the time of trial, at least, the appellant continued to receive and accept from the respondent payment of large sums of money in royalties under the lease which she now claims to have been forfeited. The estoppel of the code section needs no further elaboration.

On October 6, 1932, the appellant, for a consideration of $100,000 paid to her by the respondent, executed with respondent a written contract of release and settlement of all previous claims and controversies arising out of the operations under this same lease. Therein the lessor acknowledged "full and complete performance by Lessee of all of the terms, obligations, conditions and provisions of said leases, express or implied, which have matured or should have been performed by Lessee prior to the date hereof." In the litigation referred to, the District Court of Appeal said: (pp. 564, 565) "The agreement was a contract by the lessor that the lessee had fully and completely performed all of the terms, obligations, conditions and provisions of the lease, express or implied, which had matured or should have been performed by the lessee prior to the date thereof. This was a declaration that the lessee had not been under any duty to surrender the

lease, or if the lessee had been, that duty now was released. . . . But the agreement of settlement declares and thereby contracts that the lessee has fully performed all terms and provisions. This contract provision also was a recognition that at that date the whole lease was in full force and effect and that by nothing which previously had occurred was the lease to be deemed defeated or forfeited in whole or in part.''

 The appellant answers the contention that this release was a complete estoppel in the present litigation by the argument that she did not know of the abandonment of these five wells, hence this controversy was not contemplated by the parties to the contract. The premise is false as we have heretofore shown. But it is conceded that she did have knowledge when the complaint was served and she voluntarily withdrew her cross-complaint seeking relief because of such abandonment. The former action was one in declaratory relief to determine whether *any* act of the lessee had worked a forfeiture. If the appellant did not consider the allegations of her cross-complaint sufficient for that purpose she was at liberty to dismiss it. But by so doing she is now estopped from asserting the abandonment as a ground of forfeiture because she permitted the court at that time to assume that that particular defense was waived. It is the policy of the law that litigation shall not be had in piecemeal and that when a party has a defense to a pending cause of action it must be presented then, otherwise it will be deemed waived. For these reasons the decision of the District Court of Appeal that the agreement was a contract that the ''lessee had fully and completely performed *all* of the terms . . . of the lease'', and that it was a recognition that ''by nothing which previously had occurred was the lease to be deemed defeated or forfeited'' is a complete and binding adjudication that none of the acts now complained of was a violation of the terms of the lease.

██ On the issue of damages appellant's case rests squarely on a charge of breach of contract. In the former decision it was conclusively determined that all alleged breaches occurring prior to the settlement agreement were waived. If there is any merit in appellant's contention that these particular breaches were not contemplated in the agreement she is nevertheless barred by the statute of limitations to maintain the action. The alleged acts of abandonment and

destruction of the five wells can be viewed in no other light than an alleged breach of the terms of the lease. As such these acts all occurred from five to seven years before the action was commenced. Well No. 3 was abandoned in January, 1926, well No. 7 and well No. 1 in January, 1927. The other two were not abandoned until after written notice had been given in accord with the terms of the contract. As to the latter, the appellant had no cause of action at any time. As to the three others, the cause of action accrued at the time of the alleged breach and is barred by subdivision 1 of section 337 of the Code of Civil Procedure.

The judgment is affirmed.

Sturtevant, J., concurred.

Appellant Gertrud Wieczorek's petition for a hearing by the Supreme Court was denied August 14, 1941.