[Civ. No. 13956. Second Dist., Div. Two. May 21, 1943.]

HERBERT'S LAUREL-VENTURA, INC. (a Corporation), Respondent, v. LAUREL VENTURA HOLDING CORPORATION (a Corporation), Appellant.

[Civ. No. 13957. Second Dist., Div. Two. May 21, 1943.]

LAUREL VENTURA HOLDING CORPORATION (a Corporation), Appellant, v. HERBERT'S LAUREL-VENTURA, INC. (a Corporation), Respondent.

Zagon, Aaron & Fink, Ray Sandler and Robert Kingsley for Appellant.

Frank H. Love and A. L. Abrahams for Respondent.

MOORE, P. J.—The question for decision in this case is whether the lessee of a drive-in cafe who allows its car hops to retain all tips received from the patrons in discharge of its obligation to pay a minimum weekly wage to such car hops is obliged under its lease to include among its gross receipts such tips so received; also whether it should include in such gross receipts a total of moneys expended by the patrons in the public telephone, in cigarette-vending machines, and in music boxes installed in such cafe.

On December 12, 1939, appellant leased to respondent's predecessor a certain lot situated on Ventura Boulevard in the suburbs of the city of Los Angeles. Subsequently with appellant's consent, respondent acquired the lease by assignment and assumed its obligations. By the terms of that writing the leasehold was to be used solely and exclusively for conducting a drive-in cafe, or cocktail room, hereafter referred to as the "Drive-In."

That part of the lease which precipitated the controversy now before us is as follows:

"During the term hereof, Lessee shall pay to Lessor a minimum yearly rental of Six Thousand Dollars ($6,000.00) payable in monthly installments of Five Hundred Dollars ($500.00) each, or shall pay to Lessor a sum equal to six per cent (6%) of the yearly gross receipts of the business done by it on the demised premises, whichever sum shall be the greater.

"The term 'gross receipts' shall include all money and other things of value received by or paid to the Lessee or to others for the Lessee's use and benefit, and all credit extended by the Lessee in connection with the business conducted by it on said premises, including (but without in anywise limiting the foregoing) the sale of all merchandise of whatsoever kind and character and all services performed by the Lessee or anyone working for the Lessee for which any such compensation is received; provided, however, that in the computation of said gross receipts there shall first be deducted all direct taxes on the service or merchandise sold which are passed on to and paid by the consumers thereof or by Lessee as a tax (such as sales tax) and meals to employees and owners."

After the commencement of such business, respondent permitted cigarette-vending machines, music boxes, and a

public telephone to be installed on the premises for each of which a consideration was paid monthly for the privilege granted to the several concessionaires. Thereafter, basing its claim upon the covenants above quoted, defendant demanded payment of moneys in addition to those theretofore received in payment of rentals. Thus a dispute arose between the parties as to whether such moneys deposited in such devices constituted a part of the gross receipts of the respondent's business, or whether the gross receipts as contended by respondent should include only the moneys actually paid for the license to install the automatic appliances within the cafe.

During the same period and prior to the institution of any action, respondent kept in its service in connection with the Drive-In certain waiters and waitresses known as "car hops" on the following basis: that respondent should furnish their meals and in addition thereto the latter should retain all tips or gratuities left with them by patrons of respondent, provided, however, that if any car hop should receive in tips less than $16.75 for each week of 48 hours the difference should be paid to the car hop by respondent.

Appellant having declared to respondent that under the terms of the lease respondent was obligated under the quoted passage of the lease to pay 6 per cent of the gross sums paid into the public telephone and mechanical devices as well as of the gratuities received by the car hops, respondent on October 3, 1941, filed its action for declaratory relief whereby it demanded a judgment fixing the legal rights of the parties concerning the controversy existing between them and that the court determine the proper construction to be given to the quoted clauses and to fix the legal rights and obligations of the parties.

Thereafter on December 29, 1941, appellant filed its action for an accounting in which it set forth the same contentions which it had made to respondent and demanded that respondent be "ordered to account to plaintiff for 6 per cent of the gross business done by it from the premises governed by the lease as the term gross receipts is defined therein."

Appropriate answers were filed in both actions. Both cases were tried at the same time and all the evidence received was made applicable to each cause. Two sets of findings were signed and filed on the same day and the two consequent

judgments were entered on the same day, rejecting the demands of appellant and granting relief to respondent as prayed. The two appeals taken from those judgments are now consolidated for the purpose of decision.

The findings determine that it was not the intent of the parties that the term ''gross receipts'' as used in the lease should include any money or things of value in excess of that actually received; that it was their mutual intent that meals served employees and owners should be deducted in computing gross receipts; that with respect to the vending machines, music boxes and public telephone they intended to include as receipts only the moneys received by respondent and not the gross moneys received by the owners of those devices; also that they intended that tips given by patrons to car hops should not be included in the gross receipts of the cafe. It was further found that respondent has accounted for all percentage rental due appellant. While the findings are ordinarily conclusive upon the appellate court, we have reviewed the entire record because of appellant's claim that the construction of the lease required no evidence beyond the pages of the writing.

The gross sales through the cigarette-vending machines prior to October 31, 1941, amounted to $5,935.65. This sum was never received by respondent or entered upon its books as one of its receipts. For the period from May 31, 1940, to November 30, 1941, the total amounts received by respondent from the operation of the vending machines was at first based on commission which amounted to the sum of $805.54. Following the latter date, respondent received from the concessionaire of those devices a compensation of $35 per month. During the same period respondent received, as consideration for its concession, 50 per cent of the moneys deposited in the slots of the music boxes, aggregating $1,656.95. Subsequent thereto, $85 per month was paid by the owner of the music boxes for their continuous presence in the cafe. Such sums are the only moneys listed by respondent among its gross receipts from the concessionaires of the automatic machines. Prior to December 30, 1941, respondent received 15 per cent of the moneys collected by the public telephone installed in the premises. That percentage amounted to $179.84. This is the only amount received by respondent from the telephone company. All of such sums were entered by respond-

ent in its accounts among its gross receipts and six per cent thereof was a part of the rentals paid to appellant.

In resolving the problem presented we are not to confuse our own concept of what we would have decided if we had been the triers of fact with our immediate function to review the instant judgments. In reviewing the findings of a *nisi prius* court whose task was to interpret and construe a writing we must bear in mind that in deriving the ultimate facts that court was privileged to consider not only the phraseology of the instrument itself but also the absence of provisions that would have defeated all uncertainty. In addition, it was at liberty to take judicial notice of customs that are universally prevalent.

Assuming, *arguendo,* that the evidence received at the trial furnished no aid to the court in deriving its construction of the lease, still we should hold that the findings should be given such a construction as will support the judgment if such construction can be reasonably ascribed to them. (*Cornell* v. *Hollywood Turf Club,* 32 Cal.App.2d 204 [89 P.2d 449].) The doctrine is well established that if the construction given an instrument by the trial court is reasonable and consistent with the true intent of the parties the appellate court will not substitute another interpretation even though it seems equally tenable. (*Kautz* v. *Zurich General Acc. etc. Co.,* 212 Cal. 576 [300 P. 34] ; *Estate of Wilson,* 40 Cal.App.2d 229 [104 P.2d 716] ; *Estate of Bourn,* 25 Cal. App.2d 590 [78 P.2d 193] ; *Estate of Boyd,* 24 Cal.App.2d 287 [74 P.2d 1049].) When two inferences can reasonably be deduced from the facts the reviewing court is without power to substitute its own inferences for those of the court below. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427 [45 P.2d 183] ; *Macart* v. *San Joaquin Building & Loan Association,* 45 Cal.App.2d 395 [114 P.2d 395].) The construction of an ambiguous contract is first presented to the trial judge, whose determination ''will not be disturbed on appeal unless it be unreasonable and unjustified.'' (*Dreyer* v. *Cole,* 210 Cal. 339 [292 P. 123] ; *Wakefield* v. *Wakefield,* 37 Cal. App.2d 648, 654 [99 P.2d 1105].) But in view of the fact that some other evidence aside from the lease was received at the trial, and that it is not contrary to the construction placed upon the lease, all reasonable inferences must be indulged in support of the finding. (*Taylor* v. *Bunnell,* 211 Cal.

601 [296 P. 288]; *People* v. *Alexander*, 41 Cal.App.2d 275 [106 P.2d 450, 916].) ■ Where the facts and circumstances of a case are such as might reasonably and rightfully warrant the trial court in making its deductions, its findings will not be disturbed. (*In re Baird's Estate*, 198 Cal. 490 [246 P. 324]; *Davidson* v. *American Liquid Gas Corp.*, 32 Cal.App. 2d 382, 389 [89 P.2d 1103]; *The Texas Co.* v. *Wieczorek*, 36 Cal.App.2d 560 [98 P.2d 547].) ■ Respondent must be accorded the benefit of every inference that can reasonably be drawn in support of his judgment. (*Crawford* v. *Southern Pacific Co.*, *supra; Davidson* v. *American Liquid Gas Corp.*, *supra.*) All intendments must be resolved in favor of the correctness of the findings. (*Crow* v. *Crow*, 168 Cal. 607 [143 P. 689]; *Redmond* v. *City of Burbank*, 43 Cal.App.2d 711 [111 P.2d 375].) The appellate court will not draw contrary inferences. (*Morse* v. *Custis*, 38 Cal.App.2d 573 [101 P.2d 702].) On an appeal upon the insufficiency of the evidence all conflicts must be resolved in favor of the judgment. All reasonable inferences must be drawn in its support. If there is any substantial evidence in support of the decision of the trial court a reversal is not justified. (*Bellon* v. *Silver Gate Theatres, Inc.* 4 Cal.2d 1, 13 [47 P.2d 462].)

AUTOMATIC DEVICES AND TELEPHONE

■ The sums received by respondent from the concessionaires of the automatic devices are the only income ever paid to respondent on account of their presence in the cafe. None of the moneys taken in by such appliances ever passed into the hands of lessee. The amounts paid by the concessionaires under the classification of either commissions or of flat rentals were for the privilege of installing the devices in the cafe. It was not unreasonable for the trial judge to determine that the sale of cigarettes by the vending machines was not the sale of merchandise contemplated by the agreement. A fair construction of the lease might reasonably impel the conclusion that "gross receipts" contemplated moneys coming into the treasury of respondent from the sales of service or of merchandise by the agencies of respondent. The phrase does not necessarily under a reasonable construction include packages sold from automatic vending machines. Neither would the music issuing from the "juke boxes" necessarily be reasonably classified as a "service" performed

by the lessee or by its employee. Respondent's gains from the music boxes as well as those from the vending machines might well be classified as revenues of the cafe derived from the installation of improvements in a joint adventure with the concessionaire who retains his own share of the profits distinct from those of respondent. The contract made by the lessee with his joint adventurer is not such service as is contemplated by the lease in specifying services the payments for which are to be included among the gross receipts. The cigarettes vended are the property of the concessionaire as long as they remain in the machine. The records played remain always the property of the licensee.

Having accounted to appellant for all sums actually received on account of the presence and operation of the automatic devices, it was not unreasonable to find that respondent had fairly performed its obligations in the premises. To augment the gross receipts by including the total sums that were paid into the mechanical agencies of the concessionaires would operate to exact the payment of rentals in excess of the amounts contemplated by the parties. It must have been intended by the lessor that the operator of a public cafe would so conduct his business as to enhance its magnitude as well as to hold expenses at a minimum. The installations of the appliances must be reckoned as aids to increase the rentals. Because, forsooth, they supplement the income of the lessee should not subject it to a penalty for its thrift and intelligent management.

With respect to the telephone installed at the Drive-In for public use, such service may be found in almost any inclosure where people congregate for pleasure. It is an extension of a huge public service system of communication. Respondent is not a part of that system but, as another means for improving the attractiveness of the cafe and thereby its gross income, it licenses the public service corporation to install its instrument in the cafe. The collection of such rentals or license fees from the concessionaire and entering them as "receipts" was a reasonable compliance with the lease. The inhibition against subletting the premises was not designed to prevent the lessee from employing such modest measures and innocent agencies as might reasonably be calculated to extend the good will of the cafe, but rather was it intended to prevent occupancy by tenants not approved

by the lessor. It was not conceived to forestall the installation and use by respondent of inoffensive devices confined to two or three square feet and beneficial to and promotive of a successful conduct of the cafe.

██ The contention that the prices of the meals served to employees should be added to the gross receipts has no justification. If they are to be deducted, as the lease provides, there could be no deduction if they were first added. The argument that they are a thing of value because they are part of the compensation paid the car hops is inane. It was because of their value that the lessor consented to deduct them from the gross. If they had been deemed of no value we must infer that mention of them would have been omitted.

### TIPS

██ Appellant contends that, inasmuch as respondent discharges its obligation to pay wages to the car hops by allowing them to retain the tips they receive from the patrons, therefore the receipt of such gratuities is for the use and benefit of respondent and constitute a portion of the cafe's gross receipts. In support of this contention appellant arrays a number of evidentiary facts developed at the trial. About ten car hops were kept in the service by respondent. Pursuant to the provisions of the Labor Code (Sec. 351; Stats. 1929 p. 1971) respondent posted in its cafe the following notice: "All Tips or Gratuities given to our Car-Hops are retained by them as part compensation for their services." Every car hop declared in writing to the Unemployment Reserve Commissions (State and Federal) that she is "employed at a guaranteed wage of $16.75 per week. I agreed to credit tips against wage and meals I eat." Each of them received tips in excess of the guaranteed sum; consequently no deficit was ever paid. Although no moneys were paid as wages to the girls who served the car-borne patrons, respondent set up "fictitious pay rolls" which showed that each girl received her guaranteed weekly wage of $16.75.

However, such pay rolls performed the office of enabling respondent to maintain in force compensation insurance for the protection of the car hops against accidents that might be suffered in the course of employment. Neither respondent's scheme to carry such insurance nor its pay rolls increased the gross receipts of the cafe. No moneys left by patrons on

the service trays ever reached the treasury of respondent. They served only to reduce expenses of the cafe but never to increase its receipts. Nevertheless, appellant argues that while the tips were not actually entered in respondent's books as receipts, yet they were paid to the car hops for the "use and benefit" of respondent; that since they discharged respondent's obligation to pay the guaranteed wages of the car hops they therefore constitute a part of the Drive-In's "gross receipts." However, there is nothing in the lease itself from which it should necessarily be inferred that tips to be given to waitresses should become a part of the gross income of the cafe. Not only does the lease contain no such fact but because of the universality of the tipping custom, the absence of mention of the practice is conducive of the belief that the lessee did not suspect the lessor of having in mind the purpose of requiring such moneys to be included among the receipts of the cafe. The language used to define gross receipts may very readily have been construed as applicable only to the normal business of such an establishment. If appellant at the time of the lease intended to compute the rentals on the basis of such gifts it pursued a circuitous process to effect that intention.

A tip is not intended for the proprietor of a restaurant. It is a gratuity, i.e., "a free gift, a present." (28 C.J. 823.) It is intended by the donor to be in excess of the compensation paid to the donee by the latter's employer or a gift where there is neither a consideration for it nor a legal obligation upon the donor to part with it. (*Willingham Sash etc. Co.* v. *Drew*, 117 Ga. 850 [45 S.E. 237].) In the western world diverse motives incite the instincts of the tipper. With some it is to gratify the charitable impulse; with others it is the desire for gratitude or esteem or arises from a zeal for extending one's good will. Still in others the motive is to abide by an iniquitous practice under compulsion of popular opinion. But whatever be the motive of the giver, his tip remains a gift to the donee. It cannot be fairly said that such gifts are intended to be additional compensation for the viands or liquids purchased from the restaurateur.

Such was the prevailing concept of the "tip" at the time appellant offered his lease to his lessee, and such must have been the lessee's concept of the office of such gratuities left with any employee of a public eating house. Indeed, in De-

cember, 1939, it had long been a universal custom in Los Angeles for the patrons of restaurants to herald their benevolence or munificence by bestowing coins upon waiters who in the course of their employment with grace or dignity arrayed the ordered comestibles before their benefactors. Surely the officers of appellant were familiar with that custom. At the very time of the execution of its lease a controversy had already arisen between the California Association of Drive-In Proprietors and the Industrial Welfare Commission. That commission was about to make an order requiring drive-ins to pay wages to their car hops without regard to tips received from patrons. Within less than 50 days after the lease herein was signed the association of such drive-in proprietors had procured an injunction against the commissioner to prohibit the enforcement of its order. (See *California Drive-In Restaurant Association* v. *Clark,* ▌(Cal.App.) [129 P.2d 169], now pending in the Supreme Court.) Instead of inserting with specific phrases that gifts to car hops should be accounted for as an item of the gross receipts, the lessor chose to rely upon general terms. The language used in the lease was not such as would reasonably advise the lessee that the latter should calculate his rentals upon the gifts made to his employees while at work.

Not pleased with the finding derived, appellant contends here that since the lease requires no testimony to aid in determining the intention of the parties this court may reach a conclusion adverse to that of the court below. Conceding the premise, it were not unreasonable for us to do so because if the record were utterly void of any extraneous fact or reasonable inference in support of the construction given below, it would be reasonably practicable for us to take the writing alone and give it our interpretation. (Civ. Code sec. 1641; *Bank of America* v. *Schumacher,* 6 Cal.App.2d 651 [45 P.2d 239].) But since the construction given by the trial court to the lease in the light of judicial knowledge and with the aid of reasonable inferences, we are obliged to rest the case upon that decision.

In support of its contention that tips should be included

with the gross receipts, appellant cites respectable authorities. (*Williams* v. *Jacksonville Terminal Co.*, 118 F.2d 324; 315 U.S. 386 [62 S.Ct. 159, 86 L.Ed. 914]; *Harrison* v. *Terminal Assn.*, 126 F.2d 421; *Southern Ry. Co.* v. *Black*, 127 F.2d 280.) Those actions were brought by ''red caps'' to enforce payment of wages after they had appropriated tips which under their contract with the railroads were to be the moneys of the railroads and be credited against the salaries of such employees. In those cases, the red caps collected the tips on behalf of their employers. Necessarily such moneys were the property of the railroads and such was the understanding at the time of their receipt by the red caps.

The judgment in each of the cases is affirmed.

Wood (W.J.), J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 19, 1943.