[Civ. No. 15353. Second Dist., Div. Two. Nov. 1, 1946.]

JOSEPH LINDEN, JR., Respondent, v. MARY GERTRUDE RUBENS et al., Appellants; JOSEPH P. LINDEN, Cross-Defendant and Respondent.

Haas & Home for Appellants.

Clarence Hansen for Respondents.

MOORE, P. J.—Plaintiff instituted this action for the dissolution of a partnership and for an accounting against Mary Rubens and John Doe. A general denial was filed by Mrs. Rubens in which she was joined by her husband, Frank Rubens, who answered instead of our fictitious friend. Frank filed his cross-complaint against Dr. Joseph P. Linden, father of plaintiff, hereinafter referred to as the doctor, and alleged that the latter and he had entered into a partnership on January 19, 1943, for the buying, selling and installing of physiotherapy machines; that "said partnership was a part of the alleged partnership described in plaintiff's complaint"; that the doctor has "possession of the books and assets of the partnership and has prevented cross-complainant from having access to the same." He demanded an accounting. Following a trial an interlocutory judgment was awarded plaintiff and relief on the cross-complaint was denied. Findings having been waived, judgment was entered from which comes this appeal.

The primary question for decision is whether the evidence is sufficient to support the judgment. To sustain the interlocutory decree it is necessary that from all the evidence favorable to plaintiff and cross-defendant the implied findings be so evidentially supported as to establish (1) that Mrs. Rubens entered into a partnership with plaintiff; (2) that Frank Rubens was vitally interested as a partner with his wife in the ownership of one-half interest in the business established; and (3) that the doctor was not a partner but merely gave aid and assistance to his son in the conduct and maintenance of the partnership business. A summary of the evidence adopted by the court below will disclose the hopelessness of the appeal.

In December, 1942, plaintiff, herein referred to as Junior, called on defendant Frank Rubens concerning certain electric therapy equipment which the latter had advertised for sale. After hearing a description of the "multiple-unit machine" plaintiff departed. He next met Frank at the office of the doctor about January 18, 1943. Frank then explained that he had been engaged in a business known as Therapy Products Co.; that he had gone into bankruptcy; that one Arons had purchased the therapy machines for Mrs. Rubens; that when the balance of $7,200 should be paid to Arons "all of the equipment, supplies and apparatus would revert to

Mrs. Rubens who was buying the things'' because Frank was still ''in litigation on the bankruptcy end of it and he really could not purchase any of it himself''; that his time limit for paying the balance to Arons was approaching and if Arons should not be paid he would keep the equipment; that for these reasons he desired to go into business with someone who could either pay the balance or sell the machines, the value of which he said was about $50,000.

On January 19 both defendants returned to the doctor's office where after some conversation it was agreed that Junior and Mrs. Rubens should form a partnership to be known as Therapy Products Company. After rewriting the contract as proposed by Frank in order to provide for the rental by the partnership of certain equipment of Mrs. Rubens and for the advancement of $200 monthly to her by the partnership the document was signed by the two. They then agreed upon certain details for the conduct of the business. They selected a bank for their money transactions, employed Frank to do the selling, and agreed that if machines should not be sold in sufficient quantity to pay the Arons' balance they would borrow the deficiency from the doctor.

Junior actively managed the business: Opened the bank account; had check books printed for himself and Mrs. Rubens; helped deliver machines that were sold; kept records of sales and payment dates and sent notices to delinquent debtors. In July, 1943, the balance of $1,000 due Arons was paid with partnership checks drawn by Junior, the funds having been obtained from the sales of the machines. Mrs. Rubens issued some six checks on the firm's bank account, but otherwise took no active part in the conduct of the business.

From the foregoing facts it was an unavoidable deduction that Mrs. Rubens entered into a partnership relation with plaintiff for the conduct of the Therapy Products Company which was to engage in the construction, sale and installation of the electrical therapy equipment.

The proof of Frank Rubens' ownership of an interest in the partnership is found in his statements to the doctor about January 12 that he had many machines to sell; that they were part of his bankrupt stock; that he was looking for someone to go into partnership with him, that is, to go in with his wife since the machines belonged to her. He had been selling them and turning in the money to his friend Arons

who had purchased them at the trustee's sale in the name of Mrs. Rubens.

When the parties met at the doctor's office on January 19 Frank produced the draft of a proposed contract of partnership between Junior and Mrs. Rubens written by his own hand. He stated that he was willing to sell the machines but his selling expenses would have to be paid by the company. After reading the draft Junior typed it. Frank alone discussed the contents of the writing with Junior and sat in the room with him as he typed the instrument. After the business had been organized Frank devoted most of his time to the sales of the machines, although no salary was ever paid for his service. He demonstrated the appliances at the company's office and was familiarly in and out of the place. In September, 1943, Frank took all of the partnership files, checks, statements, and sales contracts from the office to his home to check the records. When Junior at one time suggested the payment of moneys due the doctor Frank stated ''that he had to pay another loan before he could pay the doctor.'' Finally, Frank Rubens came into court and by his own pleading declared that he had ''entered into a partnership with the doctor for the buying and selling of physiotherapy machines'' and that it was ''a part of the alleged partnership described in plaintiff's complaint. . . .'' From such facts it was a reasonable deduction that Frank Rubens was in fact a coowner with his wife of the interest in the partnership standing in her name.

By believing the doctor's testimony the task of the trial court was simplified in deriving that he was not interested as a partner in the enterprise of Junior and the Rubens family. After a discussion of Frank's proposal that a company be formed by Junior and Mrs. Rubens, the doctor stated that while he had no desire to enter into business especially because he was then litigating with a former business associate, yet he would like to see Junior in a business of his own choice and of good prospects for profit. He offered to advance the money for his son and to do all possible to get the boy established in such a business with Mrs. Rubens.

While it is true that the doctor allowed the business to be conducted in his office, recommended the machines to other chiropractors, made collections from some purchasers and advanced moneys as requested by Junior, the evidence gen-

erously warrants the finding that the doctor never intended to be a participant in the profits or the losses of the company or to exercise any control thereof. His only connection with the business, besides housing it and lending his son money to advance to it, was to give information as to other doctors needing equipment of the type sold by his son's firm. At the very outset he emphasized that he had had so much trouble with a former associate that he would go into business with no one; that his son was unemployed, devoted to mechanics and physics, and if the latter were interested the doctor would furnish money to effect the release of the merchandise from Arons. He never signed a writing or orally promised that he would be a partner of either Frank or Mary Rubens. He received no salary or commission from the company. He gratuitously commended its products, collected its moneys and advanced such sums as Junior requested. He never had a key to any house that sheltered equipment stored by the partnership. His report of sales by Therapy Products Company through the Physical Therapy Company's sales permit was regarded by the trial judge as merely one more favor to his son.

█ The rejection of the testimony of Frank Rubens was the privilege of the trial judge; in fact, it was his duty to reject it if it did not have a convincing quality. Indubitably the court was influenced by Frank's statement on January 19 that Arons had paid $7,200 for the bankrupt stock whereas the files of the bankruptcy proceeding disclosed that only $3,000 had been paid by Arons for all the merchandise. It is strictly the function of the trial judge to determine the ultimate facts from a consideration of all the evidence submitted. His findings in the absence of prejudicial error will not be disturbed and they should be given the benefit of every reasonable inference fairly deducible from the evidence. (*Herbert's Laurel-Ventura, Inc.* v. *Laurel Ventura Holding Corp.*, 58 Cal.App.2d 684, 690 [138 P.2d 43]; *Lorraine* v. *City of Los Angeles,* 55 Cal.App.2d 27, 30 [130 P.2d 140].)

█ Finally, it is contended that the court erred in excluding the testimony of Mrs. Reuss by whom appellants sought to prove a telephonic conversation with the doctor, contradictory of the latter's previous testimony that he had not had such a conversation. The good lady could not say that she was familiar with or knew the voice of the doctor.

She had definitely talked with him some six years previously, but not thereafter to her knowledge. After the court had sustained an objection to her testimony no offer was made of what appellants intended to prove thereby. For want of such offer of proof to the trial court showing that the question called for material evidence the assignment cannot be considered on appeal. (*Estate of Parkinson,* 190 Cal. 475, 476 [213 P. 259].) █ Even though it had been error it was harmless. At a subsequent stage of the trial Mrs. Reuss testified that she had never seen the doctor prior to her appearance in court.

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied November 19, 1946, and appellants' petition for a hearing by the Supreme Court was denied December 23, 1946.