[Civ. No. 15815.   Second Dist., Div. Two.   July 1, 1947.]

MADELINE GAUDIO, Respondent, v. WILLIAM B. HOSKINS, Appellant.

Roy C. Kaiser and Roy A. Linn for Appellant.

Sanner, Fleming & Irwin for Respondent.

MOORE, P. J.—Respondent sued to have a deed absolute declared to be a mortgage and to establish her right to a cancellation thereof upon tender of the amount of her debt. Upon all of the issues raised by the pleadings the court made findings favorable to respondent and entered judgment declaring that the deed is a mortgage given as security for the loan of $1,850; that respondent is sole owner and entitled to a reconveyance of the realty and to an accounting by appellant upon payment of the amount of his lien. The principal ground for reversal urged is that the evidence does not sustain the findings and the judgment. The following brief résumé of the evidence adopted by the trial court will suffice to dispel such illusion.

Prior to May 19, 1944, respondent was associated with appellant in the ownership and operation of a restaurant. As a result of such association and of four years of friendship she believed in his integrity and his good judgment, and in all business dealings relied upon his advice. Prior to May, 1944, appellant, having arranged to return to the real estate business, stated to respondent he had an exclusive listing of a flat building on south Detroit Street in Los Angeles, hereinafter referred to as Lot 56, and advised her to purchase it for $15,000; that he had a buyer for her home in Beverly Hills, the sale of which would enable her to acquire Lot 56. When he notified her that such buyer had failed him, she hesitated to go further with her plan to make her purchase but her fears having been banished by his assurances that her home could be sold, she entered into an escrow for the purchase of the flat building on his statements that (1) she could borrow $5,000, (2) that he would loan her the amount of his commission, and (3) that he would loan the balance of her down payment, which with a loan of $8,500 from one Mrs. Curran on Lot 56 would enable her to consummate the deal. He negotiated the $8,500 loan and procured a loan on her home, the net of which was $4,847.51. The combined proceeds of the two loans having been less than $15,000, appellant

loaned her $1,850 to enable her to close the transaction, "such sum to be repaid upon the sale of her home," which he promised to effect promptly, "as property was selling at the time."

Prior to close of escrow and about July 18, appellant asked respondent to call at the bank to sign some papers. When he met her there he stated, "I want to secure my loan . . . suppose you die . . . how would anyone know that I had any money in the property." She inquired, "Is that the way you do it?" "Yes," said he, "sign here, and make it secure for you and for me. After the house is sold you can pay me back." She signed as he requested, and he agreed to take care of the property and collect the rents until she had gained experience.

Respondent subsequently sold her home and advised appellant of her readiness to pay her debt to him. He replied, "What do you think I am? Property has gone up. I cut myself in on that property in case you don't know it. . . . I am half owner. . . . Do you think I am a fool? . . . The property is worth about $22,000 now." Her efforts to induce him to accept payment of his loan and to give her an accounting of the rents were futile. Her testimony was corroborated by the escrow clerk to the effect that appellant received a commission of $750 from the seller of Lot 56; that after the deed for a half interest was signed by respondent the bank took instructions "to use the deed in escrow without collection, for her account"; that respondent was present but had nothing to say about the instructions which in each instance were given by appellant; that he did not sign the Curran note or trust deed for the $8,500 loan.

While the escrow was pending appellant drew $1,000 from the joint bank account of himself and his wife to whom he stated that he was making a loan to complete the transaction because Mrs. Gaudio did not have the total amount of the purchase price. He subsequently told her that he had loaned respondent the commission. In August, 1946, when Mrs. Hoskins inquired as to where he got the money to buy a one-half interest in Lot 56, he replied that it was his commission and the loan to respondent, and that "it was very customary when you loaned money in escrow to accept a deed for a part of the property to secure your loan. He told me it was written in the California real estate law." On another occasion he told his wife that he would not release his title; "that he owned a half interest in the property, and he was not going

to release that undivided one-half interest as the property had increased in value, and he felt if he did release it he would be entitled to the increase in the value of the property."

Appellant testified that he told Mrs. Curran that her loan was for Mrs. Gaudio; he did not sign the note or otherwise obligate himself to pay it; he had never paid respondent anything; he desired to give her a note at the escrow for his share of the purchase price but "she didn't want it." He collected the rentals earned by the property and deposited them to the account of respondent. He did not pay any taxes on the property; neither did he report on his income tax return any rents collected or any interest paid in 1945.

■ While appellant gave certain testimony contrary to the evidence of respondent, the court determined that the proof of respondent was true; that appellant advanced $1,850 to respondent; that he presented to her for execution an instrument which he represented to her was to be made and delivered to him as security for his loan and that she executed it while reposing full confidence in him and while relying wholly upon his experience and integrity, without seeking other advice; that while the writing was in form a deed purporting to grant appellant an undivided one-half interest in Lot 56, yet it was intended to be and is a mortgage; that it was obtained from respondent without adequate consideration and by means of false representations and by unfair advantage taken of her confidence in him. It was concluded that respondent is entitled to a discharge and cancellation of such mortgage upon payment by her of $1,850 with interest at 6 per cent from August 1, 1944, to March 1, 1945.

The evidence in support of such findings and judgment being substantial, this court is without power to reject such proof or to substitute other findings. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Herberts Laurel-Ventura Inc.* v. *Laurel Ventura Holding Corp.*, 58 Cal.App. 2d 684, 690 [138 P.2d 43].) The facts established by respondent being such as reasonably to warrant the findings, the latter will not be disturbed. (*Davidson* v. *American Liquid Gas Corp.*, 32 Cal.App.2d 382, 389 [89 P.2d 1103].)

Not only does the proof in this action justify the findings, but as viewed in the cold record of the trial a contrary decision would have been a denial of justice. ■ While there is no inhibition against the purchase of property by one in whom confidence is reposed from a person who relies upon the integrity and advice of the purchaser, such transactions are

carefully scrutinized to the end that a deed absolute may not prevail and a sale be approved when the record vendor alleges that a sale was not intended and contends that only a mortgage was contemplated by their oral agreement for a loan. (See *Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 23 [147 P.2d 583] ; Civ. Code, § 2889.)

One other point raised by appellant requires but brief notice. About three months prior to the trial of this action appellant's wife obtained an interlocutory decree of divorce against him and by the decree entered by the Superior Court of Los Angeles County Mrs. Hoskins was awarded 55 per cent "of any and all right, title or interest" owned by either or both in Lot 56. The court having decided in the present action that such interest is no more than a mortgage lien for the sum of $1,850, it awarded 55 per cent thereof to Mrs. Hoskins payable directly to her by respondent. Appellant deplores the act of the court in thus awarding Mrs. Hoskins' interest in Lot 56 as being without the issues. The court below did not disturb the divorce decree but merely adjudicated the extent of appellant's interest in the property. But appellant is not called upon to plead for Mrs. Hoskins. She is able to speak for herself; and having had knowledge of the action and having served as a witness at the trial she was familiar with the facts and could have intervened prior to the entry of the judgment if she had willed to do so. At any rate, the judgment herein is not intended as a ban against such action as she may be advised to take to assert any claim.

The attempted appeal from the order denying a new trial is dismissed. The judgment is affirmed.

McComb, J., and Wilson, J., concurred.