BAKER *v.* EIBLER.

4-8991                                             224 S. W. 2d 820

Opinion delivered December 5, 1949.

· *Bailey & Warren,* for appellant.

*Arch Scott, John M. Lofton, Jr.,* and *Owens, Ehrman & McHaney,* for appellee.

LEFLAR, J.  This appeal arises from a bill in equity brought by Antonius P. Eibler, both in his individual capacity and as executor for his brother Charles Eibler, to recover certain money allegedly received by defendants from Charles Eibler and improperly retained by them.  Defendants admit receiving the money from

Charles, but contend that it was a gift *causa mortis* from Charles to defendant Lawren Baker, which gift became complete upon the death of Charles a few weeks after possession of the money was transferred by Charles to Baker. The Chancellor found for plaintiff Antonius Eibler and decreed that defendants pay to him $54,000, the amount found to have been received by Baker from Charles Eibler and not returned. Defendants have appealed.

Charles and Antonius Eibler were elderly and eccentric bachelors who had lived all their lives on a farm near Ludlow, Missouri. They were wealthy and penurious recluses who seldom spent money for clothing, improvements for their home, or other purposes not absolutely necessary to sustain life. Another brother, Valerian, had died in the thirties leaving all his property to the two surviving brothers. Two sisters, not sharing their brothers' eccentricities, had long since married and established homes in another state. They maintained little contact with their bachelor brothers.

Defendants Lawren Baker, a rural mail carrier, and his wife moved to Ludlow in 1938 and rented a house from the Eiblers. Gradually a close relationship developed between the two families. The Bakers took care of the brothers, particularly of Charles, when they were ill, helped them with their business affairs, worked with them on their farm, took them in the Baker car on business trips, and made themselves generally useful, never charging the Eiblers anything for their services. At times Charles Eibler when ill lived temporarily in the Baker home, usually sleeping on a cot in the bathroom, a location which apparently suited his tastes. Charles is reported to have told several people that Lawren Baker was his best friend.

On December 17, 1945, Charles Eibler, being in his last illness, executed a will leaving all his property to his brother Antonius. There was testimony that this was in keeping with a prior understanding between the brothers. Two days later, on December 19, 1945, Charles apparently handed $120,000 in cash—120 $1,000 bills—

to Lawren Baker. According to Baker's testimony, and that of Mrs. Baker, Charles told them that $60,000 of this belonged to Antonius, and was to be held by Baker for Antonius, and that the other $60,000 belonged to Charles and was thereby being given to Baker as a gift effective on Charles' death. The Bakers testified that Antonius was present when this transaction occurred and that he knew all about it. This Antonius denies. Charles died on January 9, 1946.

The history of this $120,000 is peculiar, as were its owners. It had been a part of a deposit to the Eiblers' credit in a small Missouri bank, apparently withdrawn by cashier's check just prior to each annual personal property tax assessment date, then redeposited after the assessment day was safely passed. In 1942 the Eiblers with Baker present withdrew $120,000 from the bank and put it in $1,000 bills in a safety deposit box which Baker helped secure for them in Kansas City. After a year the Eiblers, because they were unwilling to pay the $6.00 annual charge for the safety deposit box, brought the money to their home. The evidence is not clear as to how it was kept all the time from 1943 until December, 1945, but apparently it was in fruit jars behind a loose rock in a wall part of the time, and possibly in a trunk in the Baker home part of the time. There was evidence that it was kept by Lawren Baker at his home during the latter part of the period. Additional amounts were also kept with it some of the time. An explanation given by Antonius for this method of handling the money was that Baker had told them that since they were of German descent the government, or the F. B. I., might take their money away from them if it was learned that they had so much.

The estate of Charles Eibler, with Antonius Eibler as executor, was promptly administered in the Probate Court of Livingston County, Missouri, of which John M. Gallatin was Probate Judge. Defendant Lee Baker, Arkansas lawyer son[1] of Mr. and Mrs. Lawren Baker, as-

---

[1] Lee Baker died subsequent to the trial of this case in the Chancery Court, and his administratrix has been substituted as defendant.

sisted his father and Antonius Eibler constantly in handling the affairs of the estate. When the inventory was filed it showed the estate as having assets of only some $23,000, and Judge Gallatin questioned its accuracy. After some delay Lawren Baker told Judge Gallatin of the $60,000 gift which he said he had received from Charles. There is evidence that Antonius subsequently testified before Judge Gallatin that the gift to Baker had been made by Charles. There is also in the record a letter to Judge Gallatin, apparently never received by him, and apparently written by Antonius Eibler from Lee Baker's dictation while Antonius was in a hospital recovering from an operation, stating that the gift had been made. This letter is in such language as a lawyer might use in describing a gift *causa mortis,* language to the use of which Antonius Eibler was himself quite unaccustomed. At about this time it was called to the attention of all concerned that a gift tax of ten per cent, or $6,000, would have to be paid by the estate of Charles Eibler on the alleged gift to Lawren Baker. The Bakers and Antonius Eibler agreed that this would be handled through payment by Antonius as executor of the estate, but that Lawren Baker would at once turn back to the executor, from the funds in his hands, the $6,000 amount of the tax. This was done, and a ''Report of Appraiser'' setting out the assets and debts of the estate and reciting the gift and the payment of the tax thereupon, signed by Judge Gallatin as Appraiser, was duly filed with the Probate Clerk of Livingston County. Judge Gallatin himself testified, in the present suit, to the regularity of these proceedings.

Sometime during the following summer (1946) the Bakers and Antonius ceased to be friendly. The sisters and some members of their families paid a visit to Antonius at Ludlow and, upon learning what had happened, apparently questioned the disinterestedness of the Bakers' friendship. Demand was made upon Lawren Baker that he return the money to Antonius. About July 25, 1946, Lawren paid to Eibler the sum of $69,061.10 in cash, and received from Eibler a receipt acknowledging

payment of this amount "which is the money received which belongs to me and which Mr. Baker was keeping for me." Nothing in the evidence indicates how this total was arrived at as the sum supposedly due from Baker to Eibler, nor is there any evidence that would with consistency explain both a $60,000 gift and a $69,061.10 repayment. There is a strong inference available from the evidence that this was merely the total amount which Baker was able to get together in a hurry when he was subjected to unexpected pressure to return what he had received from Charles Eibler. Lee Baker was present when his father made this payment to Antonius, and it may be inferred that the wording of the receipt signed by Antonius was phrased by the younger Baker. After these events Mr. and Mrs. Lawren Baker remained in Arkansas with their son until the trial of this case.

Antonius Eibler's first suit against Lawren Baker was commenced in the Federal Court for the Eastern District of Arkansas, on the theory that Baker was a resident of Arkansas and that there was diversity of citizenship creating Federal jurisdiction. Baker however testified that he was still a resident of Ludlow, Missouri, and was staying in Arkansas only temporarily, with the result that the Federal proceeding was dismissed, but not until Eibler had opportunity to file the present action in the state court. Both Mrs. Lawren Baker and Lee Baker were made parties defendant, the reason being that they were alleged to have in their possession part of the money received by Lawren Baker from Charles Eibler, or other assets directly traceable thereto. The Chancellor's determination that plaintiff should recover $54,000 from the Bakers is now appealed from.

A preliminary question presented is whether the testimony of Lawren Baker and Mrs. Lawren Baker, as to the making of the gift by Charles Eibler to Baker, was admissible in evidence. This question arises under the so-called "dead man statute" (Arkansas Constitution of 1874, Schedule, § 2) which provides that "in actions by or against executors, administrators, or guardians in which judgment may be rendered for or against them,

neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party.'' It is suggested that Antonius Eibler's attorneys waived the Bakers' possible incompetency to testify concerning the alleged gift by propounding interrogatories to them about the gift, also that the fact that Antonius was a party plaintiff in his individual capacity, as well as in his capacity as executor, made the Bakers' testimony admissible because the ''dead man statute'' applies only to suits ''by or against executors, administrators, or guardians.''[2] A decision on these questions is not necessary in this case. The Bakers were allowed to testify fully in the Chancery Court and their testimony is set out in the transcript. Given its fullest effect, it would not on *de novo* review of all the evidence entitle us to set aside the Chancellor's findings.

The claim of a gift *causa mortis*, where a confidential relationship exists, as undoubtedly was the case here, imposes a heavy duty of proof on the claimant. A rebuttable presumption arises from the mere existence of the relationship that the gift was obtained by undue influence or improper means. The burden is on the alleged donee to rebut this presumption and to establish that the claimed gift was fairly and properly made to him. *Gilmore* v. *Lee*, 237 Ill. 402, 86 N. E. 568, 127 A. S. R. 330; *Wakefield* v. *Wakefield*, 37 Cal. App. 2d 648, 99 Pac. 2d 1105; *Baber* v. *Caples*, 71 Ore. 212, 138 Pac. 472, Ann. Cas. 1916C, 1025; *In re Moyer's Estate*, 341 Pa. 402, 19 Atl. 2d 467; *McBride* v. *Mercantile-Commerce Bank & Trust Co.*, 330 Mo. 259, 48 S. W. 2d 922. And see *Leo N. Levi Memorial Hospital Assn.* v. *Caruth, Admr.*, 213 Ark. 1, 208 S. W. 2d 983. Plaintiffs attacked the alleged gift in the principal case on two grounds: (1) that no gift was in fact ever made by Charles Eibler to Lawren Baker, and that Baker was merely keeping the money for the brothers, and (2) that if a purported gift was made Charles lacked the mental capacity to make it

---

[2] For an extended and careful discussion of the ''dead man statute'' and decisions under it, see Bethell, The ''Dead Man Statute'' in Arkansas (1941) 9 U. of Ark. Law School Bulletin 63.

effectually. The obligation to produce convincing evidence was on the defendants on these issues. Unless the preponderance of the evidence is contrary to the Chancellor's finding that defendants have failed to sustain this heavy duty of proof, the decree must be affirmed.

No good purpose would be served by a detailed review of the huge mass of testimony contained in the record in this case. It has already been briefly summarized herein, and reference to a few significant aspects of it will indicate that there was ample basis for the Chancellor's conclusions.

The only direct evidence that the alleged gift was made was that of Mr. and Mrs. Lawren Baker, who of course were interested witnesses, and their testimony was directly contradicted by the equally interested opposing witness Antonius Eibler who they say was present when the gift was made, but who emphatically denies that he was present or that any gift was made. Apart from the Bakers' actual possession of the money, the only directly corroborating evidence, as to the making of the gift, was that which developed from the probate proceedings for the estate of Charles Eibler. Probate Judge Gallatin's testimony in this connection was the most convincing offered by defendants, but much of the information upon which his testimony was based came from the Bakers themselves. When Antonius Eibler testified before Judge Gallatin about the alleged gift, if he did so testify, Antonius was in the presence and possibly under the dominating influence of the Bakers. It could readily be inferred that he participated in a deception concerning the gift because he believed, by some warped reasoning for which the Bakers may have been in part responsible, that he could thereby save money on inheritance taxes, and that he continued with the deception for a time afterwards because he was afraid of the consequences of retraction, until other relatives came in to disabuse his troubled mind. The letter that he wrote concerning the gift, apparently at Lee Baker's dictation, which was apparently retained by the Bakers ''as evidence'' without ever being shown to the addressee, is susceptible to

the same explanation. It does not appear to be a free and voluntary statement on Antonius' part.

An item in the evidence not hereinbefore mentioned is that Lawren Baker made a loan to his son Lee Baker of $20,000, admittedly from Eibler money, receiving from Lee a mortgage and twenty promissory notes for $1,000 each, all these instruments bearing the date of November 23, 1945, a date prior to that on which Lawren Baker claims to have received the gift from Charles Eibler. This tends to show that he already had got hold of the Eibler money and was using it as his own, that the claim of gift was merely a cover for what he had done already. True, the Bakers claim that the $20,000 was not actually paid to Lee until six or eight months later, and that the instruments were pre-dated for some unexplained reason. But it was shown that the $20,000 was loaned to Lee Baker to enable him to pay off a debt which was due on November 23, 1945, and the inference was reasonable that he did use it to pay off the debt on that date. Lawren Baker was extremely vague in his testimony concerning this entire transaction.

Lee Baker was not only a party to this loan, but he was regularly present after Charles died, at all important transactions involving Eibler money or the probate of the Charles Eibler estate, and even before the death of Charles Eibler was the frequent advisor of his father and the Eiblers concerning Eibler business and legal matters. He made numerous trips to Ludlow, Missouri, in this connection. He was an active participant in many of the transactions which were questioned in the instant suit, and undoubtedly planned a number of them. He could presumably have produced conclusive evidence, by way of receipts or other documents, or the oral testimony of payees, as to when he actually received the $20,000 that his father loaned to him. Throughout the trial of this case in the Chancery Court he was present in the court room, yet he did not take the stand as a witness.

The evidence taken as a whole tends to show that Charles Eibler did not make a gift of $60,000 to Lawren Baker. But if there had been a purported gift, the long

continued queer conduct of Charles, coupled with the fact of increasing mental weakness growing out of his death-bed illness, plus the confidential relationship that had developed between him and Lawren Baker, made it difficult for defendants to sustain their burden of showing competence in Charles Eibler on December 19, 1945.

We cannot say that the preponderance of the evidence is contrary to the Chancellor's finding. The decree of the Chancery Court is affirmed.